**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TIMOTHY DAVIS, on behalf of himself and others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>TARGET CORPORATION,<br><br>　　　　　　　　　　Defendant. | Case No. 23-cv-00089-JFM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR CLASS CERTIFICATION</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ........................................................................................... 2

    A.    The Pennsylvania Supreme Court's 2021 *Heimbach* opinion
        clarifies the Pennsylvania Minimum Wage Act's definition of
        compensable "hours worked." ................................................................ 2

    B.    In this lawsuit, Plaintiff seeks overtime wages for time associated
        with pre- and post- shift time spent walking within the facility to
        assigned departments. ............................................................................ 3

    C.    The record contains ample common evidence that is directly
        relevant to the resolution of Plaintiff's PMWA claim............................ 4

        1.    Target has employed Plaintiff and over 6,000 other class members at its
            Chambersburg Distribution Center during the class period........................ 4

        2.    Target as a matter of policy does not pay Class Members for time spent
            walking in the facility prior to the beginning of their scheduled shift........ 5

        3.    Target does not pay Class Members post-shift walking time within the
            facility after Class Members clock out. ..................................................... 7

        4.    Target has produced uniform payroll and timekeeping data for the Class
            Members showing the times that they punched in and out within the
            facility and the amount of time for which Class Members are actually
            paid............................................................................................................. 7

        5.    Target has produced uniform badge swipe data for Class Members
            showing the times that they enter and exit the facility............................... 8

        6.    Class Members' walking time is measurable. ............................................ 8

III.    ARGUMENT ................................................................................................ 9

    A.    Class certification is warranted. ............................................................. 9

        1.    Numerosity................................................................................................. 10

        2.    Commonality...............................................................................................11

        3.    Typicality ................................................................................................... 13

        4.    Adequacy ................................................................................................... 13

        5.    Predominance............................................................................................. 14

            a.    Rules underlying the predominance analysis................................ 15

            b.    Courts find predominance in other lawsuits
                seeking certification for uncompensated
                time. ............................................................................................. 17

            c.    The predominance requirement is satisfied
                in this case................................................................................... 19

6.    Superiority ............................................................................................ 21

7.    Summary .............................................................................................. 22

B.    Plaintiff's Counsel should be appointed as class counsel. ..................................... 23

C.    Plaintiff's proposed class notice form and protocols should be
      approved. ............................................................................................................ 23

IV.   CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591 (1997) ................................................................................... 10, 18, 22

*Amgen Inc. Conn. Ret. Plans and Trust Funds*
   568 U.S. 455 (2013) ............................................................................................. 15, 17

*Baby Neal v. Casey*
   43 F.3d 48 (3d Cir. 1994) ....................................................................................11, 13

*Boley v. Universal Health Servs., Inc.*
   36 F.4th 124 (3d Cir. 2022) .................................................................................... 13

*Bonds v. GMS Mine Repair & Maint., Inc.*,
   2019 Pa. Dist. & Cnty. Dec. LEXIS 3152 (Pa. Com. Pl., Washington Cty. Aug. 9, 2023) ....... 18

*Braun v. Wal-Mart Stores, Inc.*
   106 A.3d 656 (Pa. 2014) ........................................................................................ 17

*Califano v. Yamasaki*
   442 U.S. 682 (1979) ...................................................................................... 9, 10, 20

*Carr v. Flowers Foods, Inc.*
   2019 WL 2027299, 2019 U.S. Dist. LEXIS 77541 (E.D. Pa. May 8, 2019) ........... 21

*Chiang v. Veneman*
   385 F.3d 256 (3d Cir. 2004) ...................................................................................11

*Comcast Corp. v. Berend*
   569 U.S. 27 (2013) ................................................................................................. 16

*Craig v. Rite Aid Corp.*
   2013 WL 84928, 2013 U.S. Dist. LEXIS 2658 (M.D. Pa. Jan. 7, 2013) ................ 12

*Daugherty v. F&L United, LLC*
   2023 Pa. Dist. & Cnty. Dec. LEXIS 15 (Pa. Com. Pl., Beaver Cty. Mar. 1, 2023) .................. 18

*Eisenberg v. Gagnon*
   766 F.2d 770 (3d Cir. 1985) ................................................................................... 15

*Gen. Tel. Co. of the Southwest Falcon*,
   457 U.S. 147 (1982) ......................................................................................... 10, 20

*Hargrove v. Sleepy's LLC*
   2023 U.S. App. LEXIS 14553 (3d. Cir. June 12, 2023) .................................... 14, 22

*Hargrove v. Sleepy's LLC*
   974 F.3d 467 (3d Cir. 2020) ................................................................................... 16

*Harnish v. Widener Univ. Sch. of Law*
   833 F.3d 298 (3d Cir. 2016) ................................................................................... 15

*Hassine v. Jeffes*
   846 F.2d 169 (3d Cir. 1988) ............................................................................. 14

*Heimbach v. Amazon.com, Inc.*
   255 A.3d 191 (Pa. 2021).......................................................................... passim

*In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*
   795 F.3d 380 (3d Cir. 2015).............................................................................11

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*
   55 F.3d 768 (3d Cir. 1995) ............................................................................ 10

*In re Prudential Ins. Co. Sales Practice Litig.*
   148 F.3d 283 (3d Cir. 1998) ........................................................................... 15

*In re Suboxone Antitrust Litig.*
   967 F.3d 264 (3d Cir. 2020) ........................................................................... 15

*In re. NFL Players Concussion Injury Litig.*
   821 F.3d 410 (3d Cir. 2016) ............................................................................11

*LaRue v. Great Arrow Builders LLC*
   2022 Pa. Dist. & Cnty. Dec. LEXIS 3 (Pa. Com. Pl., Beaver Cty. Mar. 1, 2023).................... 19

*Lebby v. Walmart Inc.*
   3:21-cv-01365-RDM (M.D. Pa. June 16, 2023) ....................................................... 18

*Martin v. Selker Brothers, Inc.*
   949 F.2d 1286 (3d Cir. 1991)........................................................................... 22

*Neale v. Volvo Cars of North America, LLC*
   794 F.3d 353 (3d Cir. 2015) .................................................................... 16, 17

*Reyes v. Netdeposit, LLC*
   802 F.3d 469 (3d Cir. 2015) .......................................................................10, 11

*Rodriguez v. Nat'l City Bank*
   726 F.3d 372 (3d Cir. 2013) .............................................................................11

*Shiptoski v. SMG Grp., LLC*
   2020 U.S. Dist. LEXIS 8864 (M.D. Pa. Jan. 16, 2020) ............................................. 12

*Smith v. Strom Eng'g Corp.*
   2022 U.S. Dist. LEXIS 84837 (W.D. Pa. May 10, 2022).................................... 12, 17

*Soles v. Zartman Constr., Inc.*
   2014 WL 3557197, 2014 U.S. Dist. LEXIS 98181 (M.D. Pa. July 18, 2014) ...................... 12

*Sullivan v. DB Invs., Inc.*
   667 F.3d 273 (3d Cir. 2011)..............................................................................11

*Talarico v. Pub. P'ships, LLC*
   2022 U.S. Dist. LEXIS 86692 (E.D. Pa. May 12, 2022) ........................................... 12

*Torres v. BrandSafway Indus. LLC*
   2023 WL 346667, 2023 U.S. Dist. LEXIS 10631 (W.D. Pa. Jan. 20, 2023).......................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ..................................................................................... passim

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ..................................................................................... 11, 20

*Williams v. Jani-King of Phila., Inc.*
    837 F.3d 314 (3d Cir. 2016) ......................................................................... 17

*Williams v. Sweet Home Healthcare, LLC*
    325 F.R.D. 113 (E.D. Pa. 2018) ................................................................... 12

**Statutes**

Pennsylvania Minimum Wage Act ...................................................................... passim

**Other Authorities**

William B. Rubenstein
    *Newberg & Rubenstein on Class Actions – 6th Ed* ................................... 21

**Rules**

Fed. R. Civ. P. 23 ........................................................................................... passim

Fed. R. Civ. P. 34 ........................................................................................... 8

I.      **INTRODUCTION**

Plaintiff Timothy Davis ("Plaintiff") requests that the Court certify this lawsuit pursuant to Federal Rule of Civil Procedure 23 as a class action on behalf of workers who, since November 29, 2019, have been employed by Defendant Target Corporation ("Target") as hourly workers at its Chambersburg Distribution Center.  Specifically, Plaintiff seeks to certify a class to challenge the legality of Target's *admitted company-wide* policy of failing to pay hourly employees for time associated with: (i) pre-shift walking within the distribution center to employees' assigned departments; and (ii) and post-shift walking within the distribution center from timeclocks where the employees punch out for compensation purposes.

As discussed herein, Plaintiff challenges the legality of company-wide pay policies that Target has imposed on all potential class members at a single location in Pennsylvania.  As such, this lawsuit is especially well-suited for classwide resolution.  Plaintiff's class claims present a single, underlying legal question common to every proposed class member: whether the time spent by putative class members in the same pre- and post-shift activity constitutes "hours worked" under Pennsylvania law.  That question can be resolved with respect to all of the proposed class members by reference to the common written discovery and admissions in this case, the binding corporate testimony of Defendant's Director of Employee Relations (Michael Brewer), the deposition testimony of one of the distribution center's Operations Managers (Benjamin Harlan), and common policy documents and standardized timekeeping and pay data.

Because the requirements of Rule 23(a) and (b) are met, Plaintiff asks this Court to certify this class of workers for trial.  *See* Sections III.A *infra.*[1]

---

[1]      Plaintiff's attorneys also request that the Court appoint them as class counsel, *see* Section III.B *infra*, and approve Plaintiff's proposed notice form and protocols, *see* Section III.C *infra*.

## II.    BACKGROUND

### A.    The Pennsylvania Supreme Court's 2021 *Heimbach* opinion clarifies the Pennsylvania Minimum Wage Act's definition of compensable "hours worked."

The Pennsylvania Minimum Wage Act ("PMWA") entitles employees to overtime wages calculated at "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 per week.  *See* 43 P.S. § 333.104(c).  PMWA regulations define "hours worked" to include "time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work." 34 Pa. Code § 231.1(a).

In *Heimbach v. Amazon.com, Inc.*, 255 A.3d 191 (Pa. 2021), the Pennsylvania Supreme Court considered "whether time spent on an employer's premises waiting to undergo, and undergoing, mandatory security screening is compensable as 'hours worked' within the meaning of the [PMWA]."  *Id.* at 192-93.  In answering this question, the Court explained that the PMWA's definition of "hours worked" must be interpreted liberally in favor of workers and without regard to the "Portal-to-Portal" restrictions applicable to the federal Fair Labor Standards Act ("FLSA").  *See id.* at 200-03.  The Court then found that the security screening time is compensable under the PMWA.  *See id.* at 204.  Crucially, the Court set forth a general rule that the PMWA's conception of compensable "hours worked" includes *"all 'time during which an employee is required by the employer to be on the premises of the employer' as compensable hours worked, **regardless of whether the employee is actually performing job-related duties while on the premises**."*  *Id.* (emphasis added).

*Heimbach* also holds that the PMWA – unlike the FLSA – does not allow employers to escape their payment obligations by arguing that uncompensated time is "*de minimis*."  *See*

2

*Heimbach*, 255 A.3d at 204-09.   The Pennsylvania Supreme Court noted that the underlying legislative purpose – "to maintain the economic well-being of our Commonwealth's workforce by ensuring that each and every Pennsylvania worker is paid for all time he or she is required to expend by an employer for its own purpose" was inconsistent with a *de minimis* exception to "the PMWA's irreducible requirements."   *Id.* at 208-09.   "The PMWA plainly and unambiguously requires payment for 'all hours worked,' 43 P.S. § 333.104, signifying the legislature's intent that any portion of the hours worked by an employee does not constitute 'a mere trifle.'"   *Id.* at 209 n.19 (noting that an alleged average of 4.38 minutes per day per class member resulted in a total of 205,725 hours spent by all class members through the class period).   As *amici* for the plaintiffs in the *Heimbach* matter asserted, "even a portion of earned wages sustained by workers, particularly those earning a low or minimum wage, is not trivial or trifling to them, given the aggregated value of even a few minutes a day of lost wages."   *Id.* at 204 n.15.

### B.    In this lawsuit, Plaintiff seeks overtime wages for time associated with pre- and post- shift time spent walking within the facility to assigned departments.

This lawsuit invokes *Heimbach's* rule that "hours worked" includes "all 'time during which an employee is required by the employer to be on the premises of the employer' as compensable hours worked, regardless of whether the employee is actually performing job-related duties while on the premises."   *Heimbach*, 255 A.3d at 204.   Relying on this rule, Plaintiff challenges the legality of Target's *admitted company-wide* policy of failing to pay hourly employees for time associated with: (i) pre-shift walking within the distribution center to employees' assigned departments; and (ii) and post-shift walking within the distribution center from timeclocks where the employees punch out for compensation purposes.   *See* Complaint, ECF No. 1-4, at ¶¶ 10-11.   Plaintiff contends that the time associated with these activities is compensable under the PMWA's "hours worked" regulation as interpreted by *Heimbach*, and that Target violated the PMWA by

failing to pay for this time. *See id.* at Count I. Target disagrees as a matter of law. *See* Answer, ECF No. 7 at ¶ 27; *see also* Joint Case Management Plan ("JCMP"), ECF No. 14, at Section II ("Defendant denies the allegedly unpaid time work [sic] is compensable.").

**C.      The record contains ample common evidence that is directly relevant to the resolution of Plaintiff's PMWA claim.**

As discussed above, Plaintiff's sole claim in this case under the PMWA was squarely addressed in *Heimbach*. Moreover, as described in subsections 1-6 below, the success or failure of Plaintiff's PMWA claim turns on a body of common evidence applicable to all class members:

**1.      Target has employed Plaintiff and over 6,000 other class members at its Chambersburg Distribution Center during the class period.**

Target is a general merchandise retailer with stores nationwide.[2]   Target operates a distribution center in Chambersburg, Pennsylvania that spans over 1.3 million square feet.[3]

At the Chambersburg facility, Target employs hourly workers whom Target refers to as "Merit Team Members" and "Progression Team Members."[4]   Progression Team Members includes warehouse workers, packers, and seasonal employees.[5]   We use the term "**Class Members**" to refer to those hourly Progression Team Members who worked at the Chambersburg

---

[2]       *See* https://corporate.target.com/about (last visited Oct. 2, 2023) (attached as Exhibit I).
[3]       *See* JCMP, ECF No. 14, at Section III (Stipulated Facts); Ex. G (Def.'s Responses to Pl.'s First Interrogatories and Document Requests) at Response No. 2; Ex. J, TARGET-TDAVIS000074 (Chambersburg Map).
[4]       *See* JCMP, ECF No. 14, at Section III (Stipulated Facts); Ex. M, Deposition of Chambersburg Operations Manager Benjamin Harlan ("Harlan Depo.") 12:18-22; Ex. N, Deposition of Target's 30(b)(6) Witness Michael Brewer ("Brewer Depo.") 53:22-55:20.
[5]       Ex. N (Brewer Depo.) 53:22-55:20 ("We have . . . two different types of hourly team members. We have what's called a merit team member. That would be for our functions like HR. I think our assets protection team works in what we consider a merit role or there's a progression team member. That's our warehouse workers, our packers and they work in – they are in a progression role.").

Distribution Center since November 29, 2019.[6]  Target has employed over 6,000 Class Members at the Chambersburg Distribution Center.[7]

Plaintiff was employed at Target's Chambersburg Distribution Center as Progression Team Member until March 2022 and paid hourly.[8]  Accordingly, he qualifies as a class member.

> **2.    Target as a matter of policy does not pay Class Members for time spent walking in the facility prior to the beginning of their scheduled shift.**

Class Members are paid an hourly wage and are classified by Target as non-exempt from the PMWA's wage and hour mandates.[9]  All Class Members enter and exit the facility through one entrance.[10]  In order to enter, Class Members must tap an employee identification badge and then walk past a security desk.[11]

Class Members are assigned to a "home department" in the facility.[12]  From the entrance, Class Members are required to walk on a designated walkway to get to their assigned department.[13] All Class Members must report to their assigned departments in the facility at the start of their shift

---

[6]      *See* Complaint, ECF No. 1-4, at ¶ 8.

[7]      *See* Declaration of Michael Brewer, ECF No. 1-5, ¶ 5.

[8]      *See* Complaint, ECF No. 1-4 at ¶ 9; Answer, ECF No. 7, at ¶ 9; *accord* JCMP, ECF No. 14, at Section III (Stipulated Facts); Ex. K, TARGET-TDAVIS000030 (Timothy Davis Job Details); Ex. F, Declaration of Timothy Davis ("Davis Decl.") ¶¶ 1-2.

[9]      Complaint, ECF No. 1-4, at ¶ 8; Answer, ECF No. 7, at ¶ 8; Brewer Decl., ECF No. 1-5, at ¶ 5; Ex. N (Brewer Depo.) at 28:19-29:2; 103:15-25.

[10]     Ex. M (Harlan Depo.) 19:9-14; 35:13-17; Ex. F (Davis Decl.) ¶ 4.

[11]     Ex. M (Harlan Depo.) 20:23-21:5; 44:16-23; Ex. N (Brewer Depo.) 100:20-101:12; Ex. H, Def.'s Second Supp. Responses to Pl.'s Interrogatories and Document Requests, at Response No. 6; Ex. F (Davis Decl.) ¶ 5.

[12]     *See* Ex. L (Employee Handbook) at TARGET-TDAVIS000063 ("Use your home department time clock for punching in and out."); Ex. N (Brewer Depo.) 62:21-25, 117:10-15.

[13]     Ex. M (Harlan Depo.) 21:16-21; 22:17-23:2 ("all employees are to walk that path to their designated areas"); Ex. F (Davis Decl.) ¶ 6.

for departmental "start-up meetings."[14]  In addition, Class Members must "clock-in" at time clocks located at or near the start-up meeting locations.[15]  Target refers to these time clocks as the Class Members' "home department time clock[s]."[16]

Even though Class Members clock-in at their home department time clocks, Target generally pays them from the start of their scheduled shift.  As stated in the Employee Handbook: "paid time will begin at the scheduled start time of the assigned shift."[17]  There is, however, one exception to this general rule.  If a Class Member is running late and clocks-in after the scheduled start time, then Target pays the Class Member from his/her clock-in time.[18]

Thus, Target's applicable policy can be summarized as follows: Class Members who clock-in at their home departments time clocks *at or before* their scheduled start time, are paid from the scheduled start time, while Class Members who clock in *after* their scheduled start time are paid from the time they clock in at the home department time clock.  Therefore, under no circumstances does Target pay Class Members for the time they spend walking within the facility before their scheduled shift starts.

---

[14]     Ex. N (Brewer Depo.) 106:3-107:12 ("All progression employees are required to be at their start-up area at the start time of their shift, correct."); Ex. M (Harlan Depo.) 16:6-18:10; 21:16-24; 25:5-22; Ex. F (Davis Decl.) ¶ 7.

[15]     Ex. L (Employee Handbook) at TARGET-TDAVIS000063 ("Use your home department time clock for punching in and out."); Ex. N (Brewer Depo.) 110:8-19, 117:4-118:6; Ex. M (Harlan Depo.) 21:16-21.

[16]     Ex. L (Employee Handbook) at TARGET-TDAVIS000063; Ex. N (Brewer Depo.) 117:4-118:6.

[17]     Ex. L (Employee Handbook) at TARGET-TDAVIS000062-63 ("progression team members "are allowed punch in up to 10 minutes prior to the start of their assigned shift[,]" but "paid time will begin at the scheduled start time of the assigned shift"); *see also* Ex. N (Brewer Depo.) 108:4-15 ("You can clock in up to ten minutes prior to the scheduled start of your shift and then we pay you from the beginning of your shift, scheduled start time."); Ex. M (Harlan Depo.) 30:5-23 (confirming hourly employees are paid from shift start).

[18]     Ex. N (Brewer Depo.) 108:4-19.

**3.    Target does not pay Class Members post-shift walking time within the facility after Class Members clock out.**

At the end of their shifts, Class Members are expected to clock out using their "home department" timeclocks, located in their assigned departments near where the start-up meetings occur.[19]  Class Members are only paid until the time they clock out at the end of their assigned shifts.[20]  After clocking out, Class Members then follow the same walkway they used at the beginning of their workday to walk to the same main entrance they entered through at the beginning of their workday.[21]  Class Members must also swipe their employee badge upon exiting.[22]

In sum, as discussed in this section and Section II.C.2 above, Target does not pay Class Members for any time they are in the facility before their scheduled shift start or after they clock out at the end of their shift.[23]  Because Class Members are not paid until their shift starts (at the earliest) and are only paid until they clock out at timeclocks, they are necessarily not paid for any pre or post-shift walking time.

**4.    Target has produced uniform payroll and timekeeping data for the Class Members showing the times that they punched in and out within the facility and the amount of time for which Class Members are actually paid.**

Target has produced electronic payroll and timekeeping data showing for each workday the specific time that each class member punched in at the beginning of the shift, punched out at

---

[19]     Ex. L (Employee Handbook) at TARGET-TDAVIS000063 ("Use your home department time clock for punching in and out."); Ex. N (Brewer Depo.) 110:8-19, 117:4-118:6; Ex. M (Harlan Depo.) 21:16-21.

[20]     Ex. L (Employee Handbook) at TARGET-TDAVIS000062-63 ("progression team members will be paid to the minute until the time they clock out on their assigned shift"); Ex. N (Brewer Depo.) 107:14-108:3; Ex. M (Harlan Depo.) 35:2-8.

[21]     Ex. M (Harlan Depo.) 35:2-36:2; Ex. F (Davis Decl.) ¶ 8.

[22]     Ex. N (Brewer Depo.) 101:7-16; Ex. F (Davis Decl.) ¶ 8.

[23]     Ex. N (Brewer Depo.) 111:5-15; 135:12-136:4.

the end of the shift, and the amount of time for which they were actually paid. This data is maintained in the same format for all Class Members.[24] In addition, Target maintains standardized timekeeping data indicating the specific timeclock used by each class member to punch in and out.[25]

### 5.    Target has produced uniform badge swipe data for Class Members showing the times that they enter and exit the facility.

Target has also produced badge swipe records for Class Members for the period of October 19, 2022 to July 7, 2023.[26] These records capture the date and time a Class Member swipes his or her badge upon entering and exiting the facility.[27]

### 6.    Class Members' walking time is measurable.

As discussed at III.A.5.a *infra*, determining Class Members' damages is not an endeavor to be undertaken at the class certification phase. Moreover, where, as here, the employer has not kept time records of the unpaid walking time, this time can be calculated for Class Members as a matter of just and reasonable inference. *See infra* p. 22.

Notwithstanding, for the Court's information, the distance between the facility's entrance and Class Members' assigned departments is measurable. Plaintiff has retained an industrial engineer named Robert G. Radwin, Ph.D. to estimate the intra-facility walking time incurred by a typical employee before and after their paid time, and served a Request for Entry under Federal Rule of Civil Procedure 34(a)(2) so that Dr. Radwin can conduct a site visit to take measurements.[28] Dr. Radwin's walk time study, when combined with Target's detailed and

---

[24]    Ex. N (Brewer Depo.) 21:2-22:24; 85:14-24; 91:4-10; 108:21-14.

[25]    Ex. N (Brewer Depo.) 118:22- 119:17.

[26]    Target has represented this data is not available prior to October 19, 2022 because it generally maintains this data for a short period of time, but has preserved it since learning of this lawsuit.

[27]    *See* Ex. N (Brewer Depo.) 173:23-174:5, 175:2-176:9, 178:8-17.

[28]    *See generally* Ex. E, Declaration of Robert G. Radwin ("Radwin Decl.").

standardized payroll data and the amount of time elapsed between Class Members' badge swipe and clock-in times, will enable Plaintiff's Counsel to estimate each Class Member's weekly unpaid walk time and the unpaid wages associated with such walk time.

Given the considerable size of the facility, this unpaid walking time is significant. Indeed, Plaintiff estimates that it took him an average of 14 minutes a day to walk to and from the entrance.[29] He worked four shifts a week, so this time equates to almost an hour a week of unpaid time.

## III.    ARGUMENT

Plaintiff seeks certification of the following class: "All Progression Team Members who have been employed by Target at its Chambersburg Distribution Center at any time since November 29, 2019."

As discussed below, the above class should be certified, pursuant to Federal Rule of Civil Procedure 23(b)(3), because each requirement described in Rule 23(a) and 23(b)(3) is satisfied. *See* Section III.A *infra*. In addition, Plaintiff's lawyers from Winebrake & Santillo, LLC; Lichten & Liss-Riordan, P.C.; and Werman Salas P.C. (collectively, "Plaintiff's Counsel") should be appointed to serve as class counsel pursuant to Rule 23(g)(1). *See* Section III.B *infra*. Finally, the class notice form and protocols proposed by Plaintiff's Counsel should be approved pursuant to Rule 23(c)(2)(B). *See* Section III.C *infra*.

### A.    Class certification is warranted.

The class action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). Class litigation is "'particularly appropriate' when the 'issues involved are common to the

---

[29]    *See* Ex. F (Davis Decl.) ¶¶ 6, 8.

class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class." *Gen. Tel. Co. of the Southwest Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano*, 442 U.S. at 701). "For in such cases, 'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.'" *Id.* (quoting *Califano*, 442 U.S. at 701).[30]

To obtain class certification, Plaintiff must satisfy the four requirements listed in Rule 23(a) and the additional requirements described in Rule 23(b)(3). Rule 23(a)'s four class certification requirements are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). Rule 23(b)(3)'s two additional requirements are: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

As discussed below, Plaintiff satisfies all of the class certification requirements.

### 1.    Numerosity

The "numerosity" requirement asks whether the class is "so numerous that joinder of all members is impractical." Fed R. Civ. P. 23(a)(1). Here, numerosity is confirmed by Target's admission (confirmed by employee records it has produced) that the proposed class exceeds 6,000 employees. Moreover, each class member is easily identifiable based on Target's standardized payroll records. *See* Section II.C.4 *supra*.

---

[30]    *See also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (describing benefits of class actions); *In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (same).

## 2.    Commonality

Commonality exists where there are "questions of law or fact common to the class."  Fed

R. Civ. P. 23(a)(2).  The commonality "bar is not a high one," *Rodriguez v. Nat'l City Bank*, 726

F.3d 372, 382 (3d Cir. 2013), and "is easily met," *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.

1994).  As the Third Circuit has observed:

> Meeting this requirement is easy enough: "[W]e have acknowledged commonality to
> be present even when not all members of the plaintiff class suffered an actual injury,
> when class members did not have identical claims, and, most dramatically, when some
> members' claims were arguably not even viable."

*In re. NFL Players Concussion Injury Litig.*, 821 F.3d 410, 427 (3d Cir. 2016) (quoting *In re Cmty.*

*Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 397 (3d Cir. 2015)).

Importantly, commonality "does not require perfect identity of questions of law or fact

among all class members."  *Reyes*, 802 F.3d at 486.  "Rather, 'even a single common question will

do.'"  *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).  Plaintiffs are

required merely to "'share at least one question of fact or law with the grievances of the prospective

class.'"  *Id.* (quoting *Rodriguez*, 726 F.3d at 382).  The focus of the commonality "is not on the

strength of each plaintiff's claim, but instead is 'on whether the defendant's conduct was common

as to all of the class members.'"  *Rodriguez*, 726 F.3d at 382 (quoting *Sullivan v. DB Invs., Inc.*,

667 F.3d 273, 298 (3d Cir. 2011)).[31]

Here, Rule 23(a)(2)'s commonality requirement is easily satisfied.  In this lawsuit, Plaintiff

and every other class member are bound together by a common and overarching legal issue:

whether time associated with pre-shift and post-shift walking to and from *intra*-facility

departments and timeclocks qualifies as compensable "hours worked" under the PMWA.  Plaintiff,

---

[31]    *Accord Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) ("commonality standard of
Rule 23(a)(2) is not a high bar: it does not require identical claims or facts among class
member[s]").

relying principally on *Heimbach*, asserts that such time is compensable.  *See* Section II.A-B *supra*. Target "denies the allegedly unpaid time work is compensable."  JCMP, ECF No. 14, at Section II.

In other class action lawsuits seeking unpaid wages, courts often find commonality where the plaintiffs and the class members share a common legal issue, including when the underlying issue is whether the time spent pre and post shift is compensable under the PMWA.  *See, e.g., Smith v. Strom Eng'g Corp.*, 2022 U.S. Dist. LEXIS 84837 (W.D. Pa. May 10, 2022), *adopted* 2023 U.S. Dist. LEXIS 46982 (W.D. Pa. Feb. 22, 2023) (finding that, despite the defendant's efforts to highlight differences between class members, there was a common issue as to whether travel time before and after the paid work shift met the definition of 'hours worked' under the PMWA); *see also Williams v. Sweet Home Healthcare, LLC*, 325 F.R.D. 113, 125 (E.D. Pa. 2018) (commonality and predominance satisfied where, *inter alia*, employer's "written policies and testimony regarding its adherence or lack thereof to those policies" predominated over individual factual issues); *Talarico v. Pub. P'ships, LLC*, 2022 U.S. Dist. LEXIS 86692, at *22-23 (E.D. Pa. May 12, 2022) (finding commonality and predominance where "materials, policies and practices apply uniformly to all proposed class members and are common evidence of the claim that [defendant] is a joint employer.").[32]

---

[32]    *See also Shiptoski v. SMG Grp., LLC*, 2020 U.S. Dist. LEXIS 8864, *2 n. 2 (M.D. Pa. Jan. 16, 2020) ("Defendant's assertion that all Store Managers were overtime-exempt 'executives' is one example of a common, predominant question of law and fact that applies to the claim of every class member regardless of store location."); *Soles v. Zartman Constr., Inc.*, 2014 WL 3557197, 2014 U.S. Dist. LEXIS 98181, *13 (M.D. Pa. July 18, 2014) (finding commonality where "[e]very member of the class was allegedly subjected to the same harmful conduct by the defendants"); *Craig v. Rite Aid Corp.*, 2013 WL 84928, 2013 U.S. Dist. LEXIS 2658, *26 (M.D. Pa. Jan. 7, 2013) (commonality where "the core issue . . . is and always has been whether Rite Aid's designation of ASMs as exempt from overtime compensation was proper").

### 3.  Typicality

The "typicality" requirement is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).  The Third Circuit recently summarized the legal principles applicable to the typicality inquiry:

> The requirement of typicality is imposed to prevent certification when "the legal theories of the named plaintiffs potentially conflict with those of the [class] absentees."  To avoid conflict, typicality seeks to ensure "the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'"  In evaluating typicality, we focus on whether the class representatives' legal theory and claim, or the individual circumstances on which those theories and claims are based, are different from those of the class.

*Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 133 (3d Cir. 2022) (internal citations omitted). Under the above principles, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 57.

Here, Rule 23(a)(3)'s typicality requirement is easily satisfied.  Plaintiff's legal theory – that time associated with pre-shift and post-shift walking to and from assigned departments and timeclocks constitute compensable "hours worked" under the PMWA – is entirely aligned with the interests of other Class Members.  If Plaintiff wins on the merits, all Class Members will be entitled to unpaid overtime wages.  Plaintiff does not seek any damages that differ from the damages available to other Class Members.

### 4.  Adequacy

The "adequacy" requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied when the named plaintiff: (i) "has the ability and the incentive to represent the claims of the class vigorously;" (ii) "has obtained adequate counsel;" and (iii) does not assert claims that "conflict"

with the claims "asserted on behalf of the class." *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988).

Here, the adequacy requirement is satisfied. Plaintiff does not pursue any legal claims that conflict with the claims asserted on behalf of the Class Members. On the contrary, the instant lawsuit consists of a single PMWA claim seeking compensation for time associated with *intra*-facility walking to and from assigned departments and timeclocks. Moreover, Plaintiff's ability and incentive to vigorously represent other Class Members is confirmed by his active participation in this litigation. Plaintiff has answered written discovery requests, provided a declaration in support of this Motion, and regularly made himself available to Plaintiff's Counsel to assist in the investigation and prosecution of the case. He understands that, as a class representative, he must serve the interests of the class members.[33] Finally, Plaintiff's Counsel are experienced employment rights lawyers who have collectively litigated many wage lawsuits.[34]

### 5.    Predominance

Rule 23's "predominance" requirement is satisfied when "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed R. Civ. P. 23(b)(3). This predominance inquiry asks "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation and citation omitted); *accord Hargrove v. Sleepy's LLC*, 2023 U.S. App. LEXIS 14553, *4 (3d. Cir. June 12, 2023) ("*Hargrove II*") (unpublished). As discussed below, the predominance requirement is satisfied.

---

[33]    *See* Ex. F (Davis Decl.) ¶¶ 9-10.

[34]    *See generally* Ex. B, Declaration of Peter Winebrake ("Winebrake Decl."); Ex. C, Declaration of Sarah Schalman-Bergen ("Schalman-Bergen Decl."); Ex. D, Declaration of Maureen Salas ("Salas Decl.").

### a.    Rules underlying the predominance analysis.

The Supreme Court and Third Circuit have established four basic rules applicable to any predominance analysis. These rules are summarized below:

***First***, predominance does not require a finding that every issue in a lawsuit be resolved through common evidence. As the Supreme Court has explained:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods*, 577 U.S. at 453 (emphasis supplied; internal quotation and citation omitted); *accord Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 305 (3d Cir. 2016) ("if the court decides that the central, predominant issues in the case are common, then Rule 23(b)(3) is met despite the possibility that some subsidiary issues will require individualized evidence").[35]

***Second***, as reflected in the above passage from *Tyson Foods*, predominance is not defeated by arguments that determining class members' damages may require individualized inquiry. The Supreme Court and Third Circuit have repeatedly endorsed this basic rule. *See, e.g.*, *Tyson Foods*, 577 U.S. at 453 (predominance found "even though other important matters will have to be tried separately, such as damages"); *In re Suboxone Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020) ("Although allocating the damages among class members may be necessary after judgment, such

---

[35]    *See also Amgen Inc. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 469 (2013) "Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof '"); *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) ("presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3)"); *In re Prudential Ins. Co. Sales Practice Litig.*, 148 F.3d 283, 315 (3d Cir. 1998) ("presence of individual questions does not *per se* rule out a finding of predominance").

individual questions do not ordinarily preclude the use of the class action device.").[36]

      *Third*, in class action litigation seeking wages for allegedly unpaid work hours, employers cannot defeat predominance based on purported "individualized" issues caused by the employer's own failure to maintain timekeeping records.  This rule is exemplified by the Supreme Court's seminal *Tyson Foods* opinion.  There, food processing employees alleged that time spent "donning and doffing" protective gear at the beginning and end of the workday was compensable under the FLSA and Iowa wage law.  The employer opposed class certification, arguing that "person-specific inquiries into individual work time predominate over the common questions raised by respondent's claims, making certification improper."  *Tyson Foods*, 577 U.S. at 454.  The Supreme Court rejected this argument, observing that any such complexities were caused by the employers' own failure to record the donning and doffing time and that employees should not be "punish[ed]" for the employer's lack of records. *See id.* at 456-57.  As the Third Circuit has subsequently explained, *Tyson Foods* holds "that employees' wage claims should not suffer simply due to an employer's failure to maintain employee pay records that it is required to keep by law."  *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 482 (3d Cir. 2020).  Such a rule makes good sense in class action lawsuits seeking unpaid wages:

> If we accept this argument and allow [the employees'] class action to be thwarted by [the employer's] lack of records, we would be creating an incentive for employers not to keep records and thus avoid potential lawsuits.  We thus would be crafting a vast loophole to class certification.

*Id.* at 483.

      *Fourth*, Rule 23(b)(3) does *not* require the plaintiffs to prove "that the predominating

---

[36]     *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 374-75 (3d Cir. 2015) ("'recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal'") (quoting *Comcast Corp. v. Berend*, 569 U.S. 27, 42 (2013) (Ginsberg, J. dissenting)).

question will be answered in their favor." *Amgen*, 568 U.S. at 468.  Put differently, "the class certification stage is not the place for a decision on the merits." *Williams v. Jani-King of Phila., Inc.*, 837 F.3d 314, 322 (3d Cir. 2016).[37]

### b. Courts find predominance in other lawsuits seeking certification for uncompensated time.

Courts have found predominance in other lawsuits brought by employees seeking compensation for allegedly uncompensated work time.  Most notably, in *Tyson Foods*, *supra*, the Supreme Court upheld the certification of a class of food processing workers who sought compensation under both the FLSA and state law for "time spent donning and doffing required protective gear" at the beginning and end of the workday.  *See generally Tyson Foods*, 577 U.S. at 452-62.  The Court explained that common issues concerning the legal compensability of such time predominated over individualized issues pertaining to each class member's experience in the plant.  *See id.* at 453-54.

Meanwhile, in class action lawsuits seeking wages for unpaid work activities under Pennsylvania law, courts find predominance when the lawsuit challenges a common pay ***policy*** applicable to the entire class.  In such cases, predominance is found notwithstanding purportedly "individualized" differences among the class members.  The following decisions exemplify the point:

- *Smith*, 2022 U.S. Dist. LEXIS 84837, *adopted* 2023 U.S. Dist. LEXIS 46982 – Certifying class of 1,021 "replacement workers" assigned to seven separate factories.  Class certified notwithstanding employer's arguments that each class member's circumstances were "highly individualized."  *See id.* at *12-15, 19-24.

- *Braun v. Wal-Mart Stores, Inc.*, 106 A.3d 656 (Pa. 2014) – Certifying class comprised of 187,979 employees who worked at retail stores located throughout Pennsylvania.  Class certified notwithstanding employer's contention that each class member's right to wages

---

[37]    *See also Neale*, 794 F.3d at 371 ("predominance does not require that common 'questions will be answered, on the merits, in favor of the class'").

depended on a litany of "individualized issues." *Id.* at 663-67.

- *Bonds v. GMS Mine Repair & Maint., Inc.*, 2019 Pa. Dist. & Cnty. Dec. LEXIS 3152 (Pa. Com. Pl., Washington Cty. Aug. 9, 2023) – Denying post-trial motion to "decertify" class of Pennsylvania mine workers who recovered unpaid wages associated with waiting for and riding shuttle busses at the beginning and end of the workday. Court emphasized that the parties' competing legal arguments regarding the general compensability of the shuttle bus time "applied to all class members" and justified class certification notwithstanding defendant's argument that class members' individualized damages precluded certification. *See id.* at *22-26.

- *Daugherty v. F&L United, LLC*, 2023 Pa. Dist. & Cnty. Dec. LEXIS 15 (Pa. Com. Pl., Beaver Cty. Mar. 1, 2023) – Certifying class of 429 construction workers who sought overtime pay for various pre-shift and post-shift activities. Court agreed that plaintiff "was subjected to the same compensation and timekeeping policies and practices" applicable to the class members generally.

Moreover, in the wake of the Pennsylvania Supreme Court's *Heimbach* decision clarifying the PMWA's conception of "hours worked," many courts have certified settlement classes in lawsuits alleging that employers' pay policies fail to compensate employees for time associated with certain pre-shift and post-shift activities.[38]  In fact, Judge Mariani in the Middle District of Pennsylvania recently certified one such settlement class.  *See Lebby v. Walmart Inc.*, 3:21-cv-01365-RDM (M.D. Pa. June 16, 2023) (certifying settlement class of warehouse workers seeking compensation for pre-shift and post-shift walking time at warehouses located throughout Pennsylvania) (attached as Ex. O).  Other examples abound.  *See, e.g., Torres v. BrandSafway Indus. LLC*, 2023 WL 346667, 2023 U.S. Dist. LEXIS 10631 (W.D. Pa. Jan. 20, 2023) (provisionally certifying settlement class in lawsuit alleging that employer underpaid plaintiffs and class members "by failing to count time spent waiting for and riding the shuttle bus towards their compensable working time in violation of the PMWA); *LaRue v. Great Arrow Builders LLC*, 2022

---

[38]    As the Supreme Court has observed, courts reviewing class action settlements generally must ensure that Rule 23's class certification requisites have been satisfied.  *See Amchem Prods.*, 521 U.S. at 619-20.

Pa. Dist. & Cnty. Dec. LEXIS 3 (Pa. Com. Pl., Beaver Cty. Mar. 1, 2023) (certifying settlement class in lawsuit alleging employer violated PMWA by implementing pay policy that "fail[ed] to capture allegedly compensable time that arises before the Shift Start Time and after the Shift End Time").

**c.**      **The predominance requirement is satisfied in this case.**

Target does not dispute the existence of a company-wide pay policy that applies to every class member.   Specifically, Target's policy since at least November 29, 2019 is to pay Class Members only for the time between their scheduled shift start (at the earliest) to the time they clock-out at timeclocks at the end of their shift.   This policy is included in its employee handbook applicable to all hourly distribution center workers, and admitted by Target's 30(b)(6) corporate witness.  *See* Section II.C.2 & 3, *supra*.   Moreover, Target admits that hourly employees do not get paid for any time in the facility before their scheduled shift start and after they clock out, while at the same time acknowledging that employees must all enter the facility through one entrance and walk within the 1.3 million square foot facility to their assigned departments before their shift starts at the beginning of the day and walk the same distance after clocking out at the end of the day.  *See id.*

Target asserts that its policy of failing to pay Class Members for walking time is legal.   It "denies that the allegedly unpaid work time is compensable."  JCMP, ECF No. 14, at Section II. Plaintiff disagrees.   The PMWA's definition of "hours worked," as interpreted in *Heimbach*, includes the walking time.

All parties are represented by able counsel who will vigorously disagree regarding the reach of *Heimbach* and the legality of Target's corporate pay policy under the PMWA.   But now is not the time to resolve this common legal issue.   What matters *at the class certification stage*

19

is whether this common issue "predominate[s] over any questions affecting only individual members."  Fed R. Civ. P. 23(b)(3).

Surely it does.  The legality of Target's policy of refusing to pay for time associated with *intra*-facility walking is the "elephant in the room."  The success or failure of every Class Member's PMWA claim turns on the outcome of a single, dominant legal issue:  Does the PMWA's conception of compensable "hours worked," as interpreted in *Heimbach* and other decisional law, extend to time associated with walking from the entrance to and assigned work locations and from timeclocks to the facility's exit?

In the absence of class litigation, individual workers would be required to litigate this common legal issue over and over again.  Such inefficiencies contradict the policy underlying the class action device.  As the Supreme Court has observed, class litigation is "'particularly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class."  *Falcon*, 457 U.S. at 155 (quoting *Califano*, 442 U.S. at 701).  So it is here.  Class certification will enable this Court to determine the legality of Target's refusal to pay for and *intra*-facility walking "in one stroke." *Wal-Mart*, 564 U.S. at 390.

*Tyson Foods*, *supra*, is most instructive.  There, the Supreme Court upheld a finding of predominance because hundreds of food processing workers' claims turned on the common legal issue of "whether time spent donning and doffing the required protective gear is compensable work under the FLSA."  *Tyson Foods*, 577 U.S. at 454.  This common legal issue, standing alone, predominated notwithstanding the presence of ancillary issues concerning, *inter alia*, the amount of time individual workers spent donning and doffing their specific gear.  *See id.* 453-62.  As the Court explained, predominance can be found "even though other important matters will have to be

20

tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* at 453; *see also Carr v. Flowers Foods, Inc.*, 2019 WL 2027299, 2019 U.S. Dist. LEXIS 77541, *49-50 (E.D. Pa. May 8, 2019) (finding predominance in PMWA class action notwithstanding defendant's arguments that determining individual class members' unpaid overtime hours "will require highly individualized assessments of how much any [class member] worked"); *see also supra* pages 17-19 (discussing cases).

Here, as in *Tyson Foods*, Rule 23(b)(3)'s predominance requirement is satisfied.

### 6. Superiority

Finally Rule 23's "superiority" requirement is satisfied upon a finding that class litigation is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority assessment entails the consideration of four separate factors, each of which is addressed below:

First, the Court must consider the class members' "interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). This factor protects against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts. *See* William B. Rubenstein, *Newberg & Rubenstein on Class Actions – 6th Ed.* at §4:69. This is not such a lawsuit. On the contrary, while Class Members' potential *aggregate* damages are significant,[39] the overtime wages owed to any individual class member resulting from the unpaid walking time is unlikely to exceed a few thousand dollars (and, for many Class Members, a few hundred dollars). As such, this is precisely the type of lawsuit Rule 23's class action device is intended to facilitate. *See Amchem Products*,

---

[39]     Target's Notice of Removal asserts that the aggregate damages can exceed $5 million. *See* ECF No. 1 at ¶ 25.

521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Second, the Court must consider "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. Rule 23(b)(3)(B). Here, no related litigation exists.

Third, the Court must consider the desirability of "concentrating the litigation of the claims in a particular forum." Fed. R. Civ. P. 23(b)(3)(C). Here, litigating all Class Members' claims in this Court makes good sense, since all Class Members worked in the same facility.

Fourth, the Court must consider "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D). Here, no significant manageability issues exist. As already discussed, Target's challenged pay policy admittedly applied to all Class Members who worked in the Chambersburg Distribution Center. Moreover, in class litigation seeking wages against employers that fail to maintain timekeeping records, the class members' unpaid wages may be proven at trial "as a matter of just and reasonable inference" based on representative testimony from a sampling of class members. *See Tyson Foods*, 577 U.S. at 455-62; *Hargrove II*, 2023 U.S. App. LEXIS 14553, at *7-8; *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1296-98 (3d Cir. 1991). Thus, Target's failure to measure or record the time associated with the *intra*-facility walking does not render the litigation unmanageable.[40]

### 7.    Summary

In sum, the Court should certify the class because all of the requirements described in Rule 23(a) and 23(b)(3) are satisfied.

---

[40]    *See also* Ex. E (Radwin Decl.) ¶¶ 13-15(discussing time study to be conducted by Dr. Radwin).

**B.    Plaintiff's Counsel should be appointed as class counsel.**

Rule 23 provides that "a court that certifies a class must appoint class counsel," Fed. R.

Civ. P. 23(g)(1), and lists four factors that must be considered, *see id.* at 23(g)(1)(A)(i)-(ii).  As

discussed below, each factor favors the appointment of Plaintiff's Counsel as class counsel.

Factors (i) and (iv) require the Court to consider "the work counsel has done in identifying

or investigating potential claims in the action" and "the resources that counsel will commit to

representing the class."  These factors are satisfied because Plaintiff's Counsel have completed

extensive discovery and worked diligently on this litigation.

Meanwhile, factors (ii) and (iii) require the Court to consider "counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action" and

"counsel's knowledge of the applicable law."  These factors are satisfied because Plaintiff's

Counsel are experienced employment rights lawyers with substantial experience litigating class

and collective actions arising under federal and state wage laws.  *See* Ex. B (Winebrake Decl.);

Ex. C (Schalman-Bergen Decl.); Ex. D (Salas Decl.).

In sum, Plaintiff's Counsel are well-suited to be appointed class counsel.

**C.    Plaintiff's proposed class notice form and protocols should be approved.**

Courts certifying a class action must "direct to class members the best notice that is

practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Notice by "United States mail"

is expressly contemplated.  *Id.*

Here, as reflected in the accompanying proposed order, Plaintiff proposes that Settlement

Services, Inc. ("SSI"),[41] a well-respected third-party settlement administrator, be tasked with

---

[41]    *See* https://www.settlementservicesinc.com/.

issuing notice and that class counsel pay all fees and expenses associated with notice.  Plaintiff also proposes the following deadlines:

| Deadline (Measured from Entry of Class Certification Order) | Task to be Completed |
|---|---|
| 15 business days | Target sends class counsel and SSI an Excel spreadsheet listing class member names and last known addresses. |
| 15 business days | Target sends SSI an Excel spreadsheet listing the last four digits of each Class Member's social security number. This spreadsheet should not be sent to Class Counsel, and nothing herein prevents Target from requiring SSI to enter into a confidentiality agreement covering the spreadsheet. |
| 20 business days | SSI checks all class member addresses against the National Change of Address Database and updates addresses as necessary. |
| 25 business days | SSI mails Notice Form to each class member.  Any Notice Forms returned to SSI with a forwarding address must be re-mailed to the forwarding address within 3 business days. |
| 65 business days | Postmark deadline for class member exclusion requests. |
| 70 business days. | SSI provides all exclusion requests to all counsel. |
| 72 business days. | Class counsel files all exclusion requests with Court. |

Plaintiff submits that the above protocols constitute the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

In addition, the Court must ensure that the written notice form "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

Plaintiff's proposed notice is attached to this motion at Exhibit A and entitled "Notice of Class Action Lawsuit."  As indicated in the table below, Plaintiff's proposed notice form satisfies

each of the seven requirements listed in Rule 23(c)(2)(B)(i)-(vii):

| Rule 23(c)(2)(B) Requirement | Section of Notice Form Satisfying the Requirement |
|---|---|
| (i)  Nature of the action | Section 1 |
| (ii) Definition of the class certified | Section 2 |
| (iii) Class claims, issues, or defenses | Section 1 |
| (iv) Class member may enter an appearance through an attorney if the member so desires | Section 5 |
| (v)  Court will exclude from the class any member who requests exclusion | Section 4 |
| (vi)  Time and manner for requesting exclusion | Section 4 |
| (vii)  Binding effect of a class judgment on members under Rule 23(c)(3) | Section 3 |

In sum, the class notice protocols and the proposed notice form satisfy Rule 23(c)(2)(B)'s dictates and warrant the Court's approval.

## IV.  CONCLUSION

For the above reasons, Plaintiff asks the Court to grant this Motion and enter the accompanying proposed order.

**Dated**: October 4, 2023                Respectfully submitted,

/s/*Deirdre Aaron*
Peter Winebrake
Deirdre Aaron
**Winebrake & Santillo, LLC**
715 Twining Road, Suite 211
Dresher, PA 19025
Tel.: (215) 884-2491
pwinebrake@winebrakelaw.com
daaron@winebrakelaw.com

Sarah R. Schalman-Bergen
Krysten Connon
**Lichten & Liss-Riordan, P.C.**
729 Boylston Street, Suite 2000
Boston, MA  02116

25

Tel.: (267) 256-9973
ssb@llrlaw.com
kconnon@llrlaw.com

Maureen A. Salas (admitted *pro hac vice*)
**Werman Salas P.C.**
77 W. Washington St., Ste 1402
Chicago, IL 60602
Tel.: (312) 419-1008
msalas@flsalaw.com