IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY DAVIS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO.  23-89 |
| | : | |
| **TARGET CORPORATION** | : | |

# MEMORANDUM

**MURPHY, J.**                                                                                                                                               December 1, 2023

      This is a wage-and-hour case involving current and former employees working in a large warehouse.  They are seeking Rule 23(b)(3) certification of a class numbering over 6,000 employees.  Each workday, the employees enter the warehouse through a single entrance, walk for seven minutes or so to a designated time clock, and punch in.  They reverse the process on the way out.  By policy, they are not paid for the walking time, even when it's overtime.  Apparently, it is unclear whether this policy is lawful under the Pennsylvania Minimum Wage Act.  Class certification offers an attractively efficient way to provide that pivotal answer and address the large number of relatively modest claims at issue.  The warehouse owner opposes certification largely because each employee's time records will individually dictate her own liability and damages.  That may be true as a matter of computation, but we nonetheless certify the class because of the central legal question and the availability of common proof in the form of expert testimony and payroll data — individual differences in total recoverable amount are considerably less significant to the resolution of the case.

**I.**      **Background**

      Timothy Davis filed this case on behalf of himself and others similarly situated in the Philadelphia County Court of Common Pleas, alleging that Target violated the Pennsylvania

Minimum Wage Act (PMWA).  DI 1-4.  Target removed and then answered.  DI 1, DI 7.  After some months of discovery, Mr. Davis now moves for class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) over Target's opposition.  DI 27, DI 29.  The proposed class is "All Progression Team Members who have been employed by Target at its Chambersburg Distribution Center at any time since November 29, 2019."  DI 27-16 at 1.

Target's Chambersburg distribution center is a 1.3-million-square-foot warehouse.  DI 29 at 2.  The term "progression team members" refers to hourly, overtime non-exempt warehouse workers who advance in the distribution center with seniority.  *Id*.  There are over 6,000 proposed class members.  DI 1-5 at 3 (ECF).  Mr. Davis would qualify as a class member because he worked at the distribution center as a progression team member from February 10, 2022 to March 18, 2022.  DI 28 at 5 n.8; DI 29 at 3.  His longest work week during that brief time was 39.87 hours.  DI 29-1 at 30 (ECF).

When progression team members report to the distribution center for work, they swipe their badges at the building's single entrance.  DI 29 at 2-3; DI 28 at 5 n.10.  From there, they walk on a designated walkway to reach their assigned department locations.  DI 28 at 5 n.13; DI 27-10 at 2 (ECF) (showing the walking paths on a building plan).  There are as many as five such department locations, each with at least one time clock for employees to use to clock in.  DI 29 at 3.  After work, they clock out at the same locations.  *Id*.  Then they walk back out to the building exit, swipe their badges, and leave.  DI 28 at 7 n.21.  This case is essentially about whether progression team members ought to be paid for walking time between the building entrance and

2

the time clocks.[1]

Target maintained and produced comprehensive time-clock and payroll data dating back to November 29, 2019, including which specific time clock was used. DI 28 at 4-5, 7-8. But the available building-entrance badge-swipe data date back only to October 19, 2022. *Id.* at 8. Mr. Davis averred that on average, it took him 7 minutes (each way) to cover the distance from the entrance to his department's time clock. DI 27-6 ¶ 6. Further, Mr. Davis intends to offer the expert opinion of a professor of industrial and systems engineering, who avers that he will inspect the distribution center and use established industrial engineering principles to "calculate the time that it takes to walk between the entrance and assigned departments at the start of the day, and between timeclocks and the entrance at the end of the day." DI 27-5 ¶¶ 1, 15.

Mr. Davis's certification motion relies on predominance under Fed. R. Civ. P. 23(b)(3) and highlights a central legal question: does the PMWA's provision that employees are entitled to overtime wages for all "hours worked" over 40 per week include the walking time at issue here? *See* 43 Pa. Stat. § 333.104(c); 34 Pa. Code § 231.1 (defining "hours worked"). Mr. Davis's answer is yes, under the Pennsylvania Supreme Court's ruling in *Heimbach v. Amazon.com, Inc.* 255 A.3d 191 (Pa. 2021) (relating to time spent in security screening). Target disagrees — but that is a question for another day.[2] DI 29 at 6-8.

---

[1] Target generally pays progression team members from the starts of their scheduled shifts, but if a member is running late, then pay starts from clock-in time. DI 28 at 6. Pay stops upon clock-out. *Id.* at 7. Either way, Target does not pay for walking time.

[2] A good chunk of the briefing was dedicated to previewing this merits question. But we agree with Mr. Davis that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 459-60 (2013).

Target opposes class certification on several grounds. First, Target argues that Mr. Davis failed to demonstrate that his proposed legal question predominates over individual issues of both liability and damages — largely because of potential differences among the class members in hours worked and time spent walking. *Id.* at 8-11. Second, Target argues that Mr. Davis is not typical of those in the class and is an inadequate representative because he never worked overtime, and therefore cannot recover under his own theory of the case. *Id.* at 11-13. Third, Target argues that Mr. Davis failed to show superiority because class certification would be inefficient and unfair to Target in light of the individual issues of liability and damages. *Id.* at 13-14. The central dispute here is predominance, but we will address all of the requirements for class certification in turn.

II. **Analysis**

We may certify Mr. Davis's proposed class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; []
> (4) the representative parties will fairly and adequately protect the interests of the class[; and]
>
> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(a); 23(b)(3). "Class certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quotation omitted). Mr. Davis must demonstrate each requirement of Rule 23(a) and Rule 23(b)(3) by a preponderance of the evidence. *Id.* at 320.

**Numerosity**.  The class must be "so numerous that joinder of all members is impracticable."  Fed R. Civ. P. 23(a)(1).  Mr. Davis bears the burden of showing "that there are in fact sufficiently numerous parties."  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  There is no dispute that the proposed class exceeds 6,000 employees and that the numerosity requirement is satisfied.  DI 28 at 10, DI 31 at 1.  We agree.

**Commonality**.  Mr. Davis must show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requires that class members "share at least one question of fact or law in common with each other."  *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (quotation omitted).  The question ought to be one capable of class-wide resolution and tending to "generate common *answers* apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. 338 at 350.  Target does not contest commonality per se, but rather focuses on the related, but more stringent, predominance requirement of Rule 23(b)(3).  We agree with Mr. Davis that the class members share the important common question of whether time spent walking from the building entrance to the time clocks and back again is compensable under the PMWA.

**Typicality**.  Mr. Davis's claims must be "typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  *Baby Neal*, 43 F.3d at 55.  "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  *Id.* at 58 (quotation omitted).  The idea is to ensure alignment and to prevent a conflict between the plaintiff's theory and that of the class

5

absentees.  *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 133 (3d Cir. 2022).  This is a "low threshold."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).

At first glance, Mr. Davis would appear to have an identical claim (and identical incentives) to the rest of the class.  But Target argues that Mr. Davis is not typical of the class because he worked at Target for only 36 days and because he never worked more than forty hours in a week — the latter of which might seem to make Mr. Davis ineligible for the overtime compensation at the heart of this case.  DI 19 at 12.  With respect to the duration of Mr. Davis's employment, we see no reason why that would make him atypical (nor has Target offered such a reason).  And as for his weekly hours, Mr. Davis argues that adding his estimated 14 minutes per day of walking time to his 39.87-hour week would put him well into overtime.[3]  DI 31 at 2-3.  We agree and find that the typicality requirement is satisfied here.

**Adequacy of Representation**.  Adequacy is related to typicality because both inquire "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).  For adequacy, we look to see if the "named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class."  *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988).

---

[3] Mr. Davis also argues that the "overtime gap time" of 0.13 hours should properly be compensable under the PMWA. DI 31 at 5-6.

Target argues that Mr. Davis will be an inadequate representative again because of the length of his employment and number of hours. But we disagree with Target for the same reasons as with respect to typicality. Target adds that Mr. Davis has "proven to be an inadequate representative" because the complaint identified a class including employees at a different facility (a Philadelphia sortation center), but now identifies a class limited to the Chambersburg distribution center employees. DI 29 at 13. Target cites no authority supporting its argument, and we agree with Mr. Davis that it was permissible to seek certification of a more limited class after discovery.[4] As for the other requirements, Target has not questioned Mr. Davis's counsel or suggested any conflict of interest. And we find that Mr. Davis has demonstrated that he has experienced and appropriate counsel and that there is no apparent conflict of interest between him and the class. Therefore, Mr. Davis has shown that he is an adequate representative of the class.

**Predominance**. Before certifying the class proposed by Mr. Davis, we "must find that 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting Fed. R. Civ. P. 23(b)(3)). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. As the Supreme Court recently explained, the predominance inquiry:

> calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof. The

---

[4] *See, e.g.*, *Butela v. Midland Credit Mgmt. Inc.*, 341 F.R.D. 581, 591 (W.D. Pa. 2022) (noting that it can be appropriate to refine a class definition).

7

> predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods*, 577 U.S. at 453 (cleaned up).

Mr. Davis argues that the predominance requirement is satisfied in this case. Target has a written and undisputed policy that goes back to at least the start of the window for the proposed class that the employees will not be paid for the walking time at issue here. Mr. Davis contends that that the proposed class members must be compensated for this time under *Heimbach*, and Target disagrees as a matter of law. This is undoubtedly a common, unifying, and overwhelmingly significant question in this case, and it invites textbook application of class resolution. Target does not dispute the importance of the legal question — ironically (and somewhat self-defeatingly), Target's lead argument in opposition to certification is that Mr. Davis is wrong about *Heimbach*. But Target also argues that the *Heimbach* question does not predominate over the inevitable exercise of determining liability and damages for individual class members. As Target points out, for any workweek of any given employee, there may or may not be compensable overtime, and the compensable amount may be different. Mr. Davis does not disagree, but argues that such differences can and should be dealt with down the road.

A closer look at *Tyson Foods* will help frame the arguments. In *Tyson Foods*, the district court certified a class of current and former employees of a pork processing plant. 577 U.S. at 449. The employees were paid "only for time spent at their workstations, not for the time required to put on and take off their protective gear." *Id.* at 447. Tyson objected to certification because "the variance in protective gear each employee wore" meant that "the employees' claims

8

were not sufficiently similar to be resolved on a classwide basis." *Id.* at 448.  But the district court "concluded there were common questions susceptible to classwide resolution, such as whether the donning and doffing of protective gear is considered work under the FLSA, whether such work is integral and indispensable, and whether any compensable work is *de minimis*." *Id.* (cleaned up).[5]  The district court acknowledged Tyson's argument but found that the similarities among the class members overwhelmed the dissimilarities. *Id.* at 449.

The case went to trial, but because Tyson did not have records of donning and doffing times, the employees relied upon "representative evidence" including "employee testimony, video recordings of donning and doffing at the plant, and, most important, a study performed by an industrial relations expert" suggesting estimated average times for donning and doffing.  *Id.* at 449-50.  Another expert figured out which employees were eligible to recover and offered a calculation of allegedly compensable overtime for each employee based on payroll records and the estimated donning and doffing times.  *Id.* at 450-51.  The employees won, and the case wound up at the Supreme Court.  The thrust of Tyson's defense and appeal was that the employees' proof could not sustain the class certification or verdict because of the individual variability in donning-and-doffing times.  *Id.* at 452.

The Supreme Court approved of the district court's certification and reliance on representative evidence.  And several lessons follow.  First, in an overtime case, there is nothing necessarily wrong with certifying a class of employees that includes some discrepant liability

---

[5] Unlike this case, which was brought under only Pennsylvania law, *Tyson Foods* was brought under both the federal Fair Labor Standards Act and the Iowa Wage Payment Collection Law.  *Id.* at 448.

9

and damages results because different employees worked different amounts of time — provided that there are central questions that predominate over those differences. *Id.* at 460-62. This is true even when the class contains uninjured employees and even when an expert has to do some work to tally up all the different results.[6] *Id.* at 450-51, 60-61. Second, it is permissible to rely on an expert's estimates of typical task times, but this is not a special rule for class actions — it is merely one way to offer proof, which tends to be more appropriate when the defendant lacks adequate records, and can be contested like any other evidence. *Id.* at 454-57 (discussing and relying upon *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88 (1946)).

We agree with Mr. Davis that this case closely tracks *Tyson Foods*. Both are overtime cases involving classes of employees seeking compensation for small amounts of time at the start and end of each day. Both involve the central questions of whether that *type* of time is compensable under the applicable law, and hence whether the employer's uniform policy of not paying workers for that type of time is sustainable under the law. In both, employees sought to rely on an expert's estimates of typical times and other representative evidence because the employer lacked records that could eliminate the need for such evidence. And in both, damages vary from class member to class member, and there are some who may not be able to recover.[7]

---

[6] "Recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374-75 (3d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 42 (2013) (Ginsburg, J., dissenting)). The overlap between liability and damages in an overtime case may cause complications for a jury trial, as the Supreme Court in *Tyson Foods* explained, but those complications will be addressed at the right time. 577 U.S. at 461; *id.* at 462-67 (Roberts, C.J., concurring).

[7] Furthermore, to the extent that Target is suggesting that the proof at trial will be individual rather than common simply because each individual has different time entry data, we

Thus, we see little reason not to reach the same conclusion as in *Tyson Foods* — the central question of whether the relevant time is categorically compensable predominates over individual differences in liability or damages.

Target relies mainly on *Comcast*, which held that a class action was improperly certified under Rule 23(b)(3) because the proposed damages model could not establish a classwide measure of damages. 569 U.S. at 34-38. *Comcast* proceeded on the same principles that we discussed above, but reached a different outcome because the class members allegedly suffered varied injuries from rather complex antitrust harms. *Id.* at 38 (explaining the "model's inability to bridge the differences between supra-competitive prices in general and supra-competitive prices attributable to the deterrence of overbuilding" and noting that "[t]he permutations involving four theories of liability and 2 million subscribers located in 16 counties are nearly endless"). Other than that it also involves Rule 23(b)(3), this case has nothing in common with *Comcast*. Instead, our conclusion that the predominance requirement is satisfied is consistent with how courts have addressed similar fact patterns. *E.g.*, *Hargrove v. Sleepy's LLC*, 2023 WL 3943738 (3d Cir. June 12, 2023) (affirming a class certification relating to whether drivers were properly classified as independent contractors in light of a common corporate policy and notwithstanding differences among class members); *Talarico*, 2022 WL 1524109, at *6-12 (certifying a class of healthcare workers seeking overtime compensation); *Carr v. Flowers*

---

do not view payroll records and so forth as individual proof, but rather a unified source of evidence that will allow for en masse calculations. *Tyson*, 577 U.S. at 450-51; *see also Talarico v. Pub. P'ships, LLC*, 2022 WL 1524109, at *9 (E.D. Pa. May 12, 2022) (explaining that whether employees "worked more than 40 hours per week without proper overtime compensation can be determined from generalized proof consisting of [defendant's] own payroll records," and citing cases taking the same view of such proof).

11

*Foods, Inc.*, 2019 WL 2027299 (E.D. Pa. May 7, 2019) (certifying a class of food distributors said to be misclassified as independent contractors).

**Superiority**.  To determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Rule 23 calls for the consideration of four matters:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Put simply, we must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533-34 (3d Cir. 2004).

Mr. Davis argues that this case is "precisely the type of lawsuit Rule 23's class action device is intended to facilitate" because it presents the aggregation of thousands of claims likely too small to warrant individual litigation, and there are no real drawbacks or difficulties presented by certification.  DI 28 at 21-22.  Target disagrees for two reasons: first, because "each class member would essentially need his or her own personal trial," thus obviating any efficiency gains from class certification, and second, because certification would unfairly deprive Target of its ability to show that some class members were not injured.  DI 29 at 14.  We agree with Mr. Davis that class action treatment is superior to the alternative here, primarily because of the large class size, the modest individual claims, and the largely unifying legal issues and common proof.

12

Target is wrong about the need for individual trials for all the same reasons already discussed above regarding predominance. Common proof will be at the center of both the liability and damages determinations, with individualized issues appearing to take a secondary — and calculations-only — role. As for fairness, we fail to see how Target is cut off from its ability to attempt to disrupt the proofs put on at trial. The issue of how much recovery is warranted, including how many employees worked allegedly compensable overtime, is entirely live and Target is free to dispute it.

### III.     Conclusion

We have addressed all of the arguments in opposition that Target raised, and concluded that the proposed class should be certified: "All Progression Team Members who have been employed by Target at its Chambersburg Distribution Center at any time since November 29, 2019." Mr. Davis proposes that his counsel be appointed as class counsel, and sets forth a class notice form and protocols pursuant to Fed. R. Civ. P. 23(c)(2)(B). DI 27-1 (proposed class notice); DI 27-16 (proposed order). Target did not oppose any of these proposals, and we find that they are suitable under Rule 23. The order accompanying this opinion sets forth the details.