**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TIMOTHY DAVIS | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  23-89 |
| | : | |
| TARGET CORPORATION | : | |

## MEMORANDUM

MURPHY, J.                                                  February 19, 2025

       This is a wage-and-hour class action involving warehouse employees at a large Target distribution center in Chambersburg, Pennsylvania.  The class members seek overtime compensation for the time it takes them to walk from the warehouse entrance to their assigned work departments, and vice versa.  Federal law has long barred claims for walking time.  But plaintiff brought this case under the Pennsylvania Minimum Wage Act (PMWA).  Both parties move for summary judgment.  Despite Target's efforts to call into question controlling Pennsylvania law — including a squarely on-point Pennsylvania Supreme Court case and long-standing PMWA regulations — the law here is clear.  And the material facts before us are undisputed.  Pennsylvania has adopted an expansive definition of compensable "hours worked" that includes all time during which employees are "required by the employer" to be on the employer's premises.  When class members walk between the warehouse entrance and their assigned home departments before shift start and after clocking out, they are required by Target to be on Target's premises.  This walking time is compensable under the PMWA, as the Pennsylvania Supreme Court recently held in a nearly identical case about mandatory security-screening time.  Target asks some reasonable questions about the implications of this result, but those questions are for a different audience.  We grant Mr. Davis's motion for partial summary judgment.  A trial on damages will follow.

1

## I.    FACTUAL BACKGROUND[1]

Target is a corporation headquartered in Minneapolis, Minnesota.  DI 58-1 ¶ 1.[2]  It operates distribution centers in various locations in the United States, including a center in Chambersburg, Pennsylvania.  *Id.* ¶ 3.  From February 10, 2022 through March 18, 2022, Timothy Davis was employed at Target's Chambersburg distribution center as a Progression Team Member (PTM).  *Id.* ¶ 8.  PTMs, such as Mr. Davis, are warehouse workers, packers, and seasonal employees who work at the distribution center and advance based on seniority.  *Id.* ¶ 7; DI 60-2 ¶ 3.  Target classifies PTMs as "non-exempt" from the mandates of the PMWA and pays them an hourly wage.  DI 58-1 ¶ 9.  Mr. Davis brings this wage-and-hour class action on behalf of himself and all PTMs employed at the Chambersburg distribution center at any time since November 29, 2019.[3]

Target's Chambersburg distribution center is a warehouse facility spanning more than 1.3 million square feet.  *Id.* ¶ 4; DI 60-2 ¶ 14.  All employees, including class members, enter

---

[1] We derive these factual allegations from (1) Mr. Davis's statement of undisputed material facts in support of his motion (DI 58-1), undisputed by Target in its response (DI 64-1); (2) Target's additional statement of undisputed material facts (DI 64-1), undisputed by Mr. Davis in his reply (DI 69-1); (3) Target's statement of undisputed material facts in support of its motion (DI 60-2), undisputed by Mr. Davis in his response (DI 63-1); (4) Mr. Davis's statement of additional undisputed material facts (DI 63-1), which Target did not dispute in its reply (DI 68); and (5) exhibits and record items accompanying the parties' briefs.  *See* Fed. R. Civ. P. 56(e) ("If a party. . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion.").  Because the parties filed cross-motions for summary judgment, we note factual disputes that are supported by the record.

[2] We adopt the pagination supplied by the CM/ECF docketing system.

[3] We certified the following class on December 1, 2023: "All Progression Team Members who have been employed by Target at its Chambersburg Distribution Center at any time since November 29, 2019."  DI 36.  We use "class members" to refer to PTMs in this class.

and exit the warehouse at the same location.  DI 58-1 ¶ 10.  Class members swipe their

employee badges at a security desk near the entrance.  DI 60-2 ¶¶ 6.  From there, they walk

through a set of double doors to enter the warehouse floor.  *Id.* ¶ 7.  Each class member is

assigned a home department in the distribution center.  DI 58-1 ¶ 11.  At the start of each shift,

class members must report to their assigned home departments for "start-up" meetings.  DI 58-1

¶ 22.

     Class members are to follow a designated walking path to get from the warehouse floor

entrance to their assigned home departments.  DI 60-2 ¶ 8; DI 58-5 at 7.[4]  The path leads to all

departments in the distribution center, DI 58-1 ¶ 17, and it is demarcated by painted lines on the

floor, *id.* ¶ 13.  Class members are to follow the path for safety reasons, such as to minimize

interactions with warehouse equipment.  *Id.* ¶ 14; DI 58-8 at 9.  They receive training on "day

one" about the importance of staying on the walking path.  DI 58-1 ¶ 15.  Managers who

observe class members walking outside of the path will remind them to stay within it.  *Id.* ¶ 16.

     Within the distribution center, there are time clocks in six separate locations.  DI 60-2

¶ 16.  Target policy instructs class members to use the time clock at or near their home

department to clock in and out.  DI 58-1 ¶ 23; DI 58-10 at 26.[5]  Target trains them on using

---

[4] Mr. Davis asserts that class members "are required to walk on a designated safety
walkway to get to their assigned department."  DI 58-1 ¶ 12.  Target disputes this allegation
because Mr. Davis testified that some individuals "wouldn't stay in the pedestrian walking path"
when leaving their home departments at the end of the day.  DI 50-3 at 45.  Even if some class
members strayed from the walking path, this does not create a genuine dispute as to whether
class members were supposed to follow it.  Target asserts in its own statement of facts that
"Team Members would follow a green walking path to get to their department."  DI 60-2 ¶ 8.

[5] The parties dispute whether class members were "encouraged" or "required" to use their
home-department time clocks, *see* DI 63-1 ¶ 18, but there is no dispute that Target's "time clock
rules" instruct class members to "[u]se your home department time clock for punching in and
out."  DI 58-10 at 26; DI 60-3 at 9.  Target disputes that class members *always* use their home-

home-department time clocks, and the topic is covered at start-up meetings. DI 58-1 ¶¶ 25-26. Class members could be disciplined under Target policy for failing to use their home-department time clocks. DI 58-7 at 8.[6] Mr. Davis testified that it took him from five to seven minutes to walk between the warehouse entrance and the time clock at his assigned home department. DI 60-3 at 51.[7] After clocking in, class members attend the start-up meeting. DI 60-2 ¶ 11.

Class members are paid from the start time of the assigned shift to the time they clock out. DI 58-1 ¶¶ 28, 31; DI 58-10 at 25.[8] If they clock in after the start of the shift, Targets pays them from the clock-in time. DI 58-1 ¶ 29. After clocking out, class members are expected to follow the walking path back to the warehouse floor entrance. *Id.* ¶ 32.[9] Mr. Davis testified that some employees were "all but running" on the path after clocking out. DI 60-2 ¶ 25; DI 60-3 at 45. Target policy instructs class members to "never perform any work off the clock for any reason." DI 58-10 at 26; *see* DI 64-1 at 12 ¶ 1.

Per Target policy, personal devices such as cell phones, iPods, iPads, earphones, and

---

department time clocks. *See* DI 64-1 ¶¶ 23-26, 28, 30.

[6] Mr. Davis asserts that employees "can be disciplined" for using the incorrect time clock and cites to testimony from Kathryn Gladhill. DI 58-1 ¶ 27. Target disputes Mr. Davis's use of "can be" instead of "could be." DI 64-1 ¶ 27. Because the testimony cited by Mr. Davis uses "could be," there is no dispute in the record. *See* DI 58-7 at 8.

[7] Specifically, Mr. Davis first testified that it took him, on average, six minutes to walk from the entrance to the time clock. DI 60-3 at 48. If he used the restroom on the way, it took him closer to nine or ten minutes. *Id.* Later in his deposition, he testified that it took him "anywhere from five to seven minutes" to walk from the entrance to the time clock, and vice versa. *Id.* at 51-52.

[8] We interpret Target's response at DI 64-1 ¶ 28 to dispute that class members always clock in at their home-department time clocks, but not the contents of Target's pay policy.

[9] Target disputes this fact as follows: "Although employees are expected to walk a path to their designated areas, Plaintiff Davis testified some individuals 'wouldn't stay in the pedestrian walking path.'" DI 64-1 ¶ 32 (citations omitted). As already noted, even if some class members stray from the path, there is no dispute as to whether class members are expected to follow it.

smart watches are prohibited from use in any operational area of the warehouse building, including the warehouse floor.  DI 63-1 at 14 ¶ 1; DI 63-7 at 7-8.  Class members may use cell phones only in designated areas protected by steel or concrete bollards or breakrooms.  DI 63-1 at 14 ¶ 2.  Similarly, class members may only consume food or beverages in breakrooms, patios, and other designated areas.  *Id.* at 14 ¶ 5.

Target does not pay class members for any time spent in the warehouse before shift start or after clock out.  DI 58-1 ¶ 33.  Mr. Davis claims that the PMWA obligates Target to pay class members for the time spent walking from the warehouse entrance to their assigned home departments before shift start, and from their home-department time clocks to the warehouse entrance after clocking out ("walking time").  *See* DI 8 at 9-14; DI 59 at 5.

## II.    CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.  Mr. Davis's Motion for Partial Summary Judgment

Mr. Davis moves for partial summary judgment on liability but not damages.  DI 58.  He argues that as a matter of law, walking time is compensable under the PMWA.  DI 59.  Relying on *Heimbach v. Amazon.com, Inc.*, 255 A.3d 191 (Pa. 2021), Mr. Davis contends that the Pennsylvania Supreme Court has endorsed an expansive definition of "hours worked" that includes time during which an employee "is required by the employer to be on the premises of the employer."  DI 59 at 15.  Mr. Davis argues that there is no genuine dispute that walking time falls within this definition and is thus compensable.  *Id.* at 16-17.[10]

_____

[10] Mr. Davis also argues that Target cannot assert a de minimis defense because such a defense is categorically barred under the PMWA.  DI 59 at 18.  Target recognizes the same and does not oppose summary judgment with respect to its de minimis defense.  DI 64 at 6.  Therefore, we must grant Mr. Davis's motion as to the de minimis defense.  As a matter of law, Target cannot assert a de minimis defense to claims under the PMWA.  *See Heimbach*, 255 A.3d at 208-09 (holding there is no de minimis exception under the PMWA).

Target advances three principal arguments in response.  DI 64.  First, Target asserts that the *Heimbach* decision is distinguishable, and comments in the decision concerning the definition of "hours worked" are dicta.  *Id.* at 7-9.  Second, Target argues that even if *Heimbach*'s definition controls, PMWA regulations are vague and unenforceable.  *Id.* at 10-15.  Finally, Target claims there is no evidence showing that class members were required to be on Target's premises during walking time.  *Id.* at 15.

### B.  Target's Motion for Summary Judgment

Target raises similar arguments in its cross-motion for summary judgment.  *See* DI 60-1.  First, Target argues that the *Heimbach* decision is not controlling.  *Id.* at 13-15.  Second, Target argues that the PMWA regulation defining "hours worked" is unconstitutionally vague.  *Id.* at 15-27.  Third, Target argues that summary judgment is proper as to the 2,195 class members who worked no overtime, and thus suffered no damages, during the relevant class period.  *Id.* at 31.

Mr. Davis responds that *Heimbach* is controlling precedent, and Target has not met the "high bar" to demonstrate that PMWA regulations are void for vagueness.  DI 63.  Mr. Davis does not oppose dismissing the 2,195 class members without damages through December 30, 2023.  *Id.* at 19-20.

We held oral argument on the parties' cross-motions for summary judgment, and other pending motions,[11] on November 14, 2024. The summary judgment motions are ripe for disposition.  For the following reasons, we grant Mr. Davis's motion for partial summary judgment, deny Target's motion for summary judgment as to liability, and grant in part Target's

---

[11] Also pending before us are Target's motion to exclude the expert testimony and opinions of Robert Radwin and Liesl Fox (DI 66) and Target's motion to decertify the class (DI 72).  Both motions are ripe for disposition.  We address these motions in the attached order.

motion for summary judgment as to the class members without overtime damages.

## III.    STANDARD OF REVIEW

We have diversity jurisdiction over this matter under the minimal diversity provisions of the Class Action Fairness Act.  28 U.S.C. § 1332(d).  As a federal court sitting in diversity, we must apply substantive state law.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Chamberlain v. Georgia*, 210 F.3d 154, 158 (3d Cir. 2000).  "In so doing, we are not free to impose our own view of what state law should be; we are to apply state law as interpreted by the state's highest court."  *McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 825 (3d Cir. 1994).  In the absence of a controlling decision by the state supreme court, "we must predict how it would rule if faced with the issue."  *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216 (3d Cir. 2010) (citing *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir. 2004)).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact."  *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021).  When considering a motion for summary judgment, we must "view the record and draw inferences in a light most favorable to the non-moving party."  *In re Ikon Off. Sols., Inc.*, 277 F.3d 658, 666 (3d Cir. 2002).  We ask "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In general, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson*, 477 U.S. at 252.  "[T]he nonmoving party must counter with 'specific facts showing that there is a genuine issue for trial.'"  *Campo v. Mid-Atl.*

*Packaging Specialties, LLC*, 564 F. Supp. 3d 362, 379 (E.D. Pa. 2021) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, where the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent. The Third Circuit has stated that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Nat'l State Bank v. Fed. Rsrv. Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992).

These same standards apply to cross-motions for summary judgment. *See Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008); *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987). District courts are permitted to decide cross-motions for summary judgment concurrently. *See, e.g., Doe v. Schorn*, 711 F. Supp. 3d 375, 385 (E.D. Pa. 2024); *Hawkins v. Switchback MX, LLC*, 339 F. Supp. 3d 543, 547 (W.D. Pa. 2018). When doing so, we must consider each motion separately and view the evidence in the light most favorable to the non-moving party with respect to each motion. *See Lawrence*, 527 F.3d at 310.; *see also* 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (4th ed. 2024). Importantly, "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified." *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968); *see Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co*., 10 F.3d 144, 150 (3d Cir. 1993).

**IV.    DISCUSSION**

**A. PMWA Liability**

Summary judgment turns on the question of whether walking is compensable under Pennsylvania law.  The PMWA requires employers to pay their employees for all "hours worked."  43 Pa. Stat. § 333.104(a).  The PMWA overtime provision states that "[e]mploye[e]s shall be paid for overtime not less than one and one-half times the employe[e]'s regular rate as prescribed in regulations promulgated by the [Secretary of Labor and Industry]."  43 Pa. Stat. § 333.104(c).  It further provides that "the secretary shall promulgate regulations with respect to overtime subject to the limitations that no pay for overtime in addition to the regular rate shall be required except for hours in excess of forty hours in a workweek."  *Id.*[12]

State regulations define "hours worked" as follows:

> *Hours worked*--The term includes time during which an employee *is required by the employer to be on the premises of the employer*, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employee is required or permitted to work during that time, and provided further, that time spent on the premises of the employer for the convenience of the employee shall be excluded.

34 Pa. Code § 231.1(b) (emphasis added).  Because we determine that walking time falls within the PMWA's definition of "hours worked," we grant Mr. Davis's motion for partial summary judgment and deny Target's motion.

---

[12] Target points out that § 333.104(c) references "hours" and not "hours worked."  DI 64 at 10 n.2.  To the extent Target argues that "hours worked" as defined in 34 Pa. Code § 231.1(b) is not relevant to the overtime calculation, this argument has been explicitly rejected by the Pennsylvania Supreme Court.  *See Heimbach*, 255 A.3d at 203 n.12 ("As our Court has recognized, the computation of overtime pay for a "workweek" depends on a determination of the actual number of "hours worked" by an employee in that "workweek"; thus, ascertaining whether a particular employee activity constitutes "hours worked" is an indispensable part of that assessment." (citing *Chevalier v. Gen. Nutrition Ctrs., Inc*., 220 A.3d 1038, 1058 (Pa. 2019))).

1.  <u>The Pennsylvania Supreme Court's decision in *Heimbach* controls our analysis.</u>

According to Mr. Davis, *Heimbach* demands an expansive reading of the PMWA under which walking time constitutes "hours worked" because it is time during which an employee is required to be on the premises.  DI 59 at 11-16. Target argues that *Heimbach* — and any definition by the Pennsylvania Supreme Court of "hours worked" under the PMWA — is distinguishable and non-dispositive.  DI 64 at 7-9; DI 60-1 at 13-15.

It helps to put the issue at hand in the context of past interpretations of both the Pennsylvania labor law and the much older, federal version: the Fair Labor Standards Act of 1938 (FLSA).  With the FLSA, Congress created the right to a minimum wage and to "time-and-a-half" overtime pay for employees working over forty hours a week.  29 U.S.C. § 201 *et seq.* At first, the United States Supreme Court "broadly" interpreted the terms "work" and "workweek" under the FLSA.  *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014).  It defined "work" as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Tennessee Coal, Iron, & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *see Armour & Co. v. Wantock*, 323 U.S. 126, 132-34 (1944) (holding that time firefighters spent "in playing cards and other amusements, or in idleness" while on call at the fire station was working time); *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 163 (1945) (applying *Tennessee Coal*).

In a 1946 case, workers sought compensation for time spent walking to their respective work benches in a pottery factory.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691 (1946).  The *Anderson* Court defined "workweek" to include "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed

work place." *Id.* at 690-91. It then held that time spent walking to the work benches was compensable "work" under the *Tennessee Coal* standard, reasoning that the "employee's convenience and necessity . . . bore no relation whatever to this walking time." *Id.* at 691. Rather, employees "walked on the employer's premises only because they were compelled to do so by the necessities of the employer's business." *Id.*

 "These decisions provoked a flood of litigation." *Busk*, 574 U.S. at 31; *see also Heimbach*, 255 A.3d at 195 (discussing *Anderson*). Congress responded by passing the federal Portal-to-Portal Act (PPA) in 1947. *See Busk*, 574 U.S. at 31-32; *Sec'y U.S. Dep't of Labor v. Nursing Home Care Mgmt.*, No. 23-2284, 2025 WL 351599, at *2 (3d Cir. Jan. 31, 2025). The PPA states that employers cannot be liable under the FLSA for failure to pay overtime compensation for the time spent "walking . . . to and from the actual place of performance of the principal activities which such employee is employed to perform" and doing "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a)(1)-(2); *see Nursing Home Care*, 2025 WL 351599, at *2. Applying the PPA, the Supreme Court in *Busk* held that time spent waiting for and undergoing security screening at a Nevada warehouse was not compensable under the FLSA because security screening was not the workers' principal activity, or "integral and indispensable" to their duties. 574 U.S. at 35.[13]

Twenty-one years after Congress enacted the PPA, the Pennsylvania legislature passed the PMWA. *Heimbach*, 255 A.3d at 196. The PMWA does not contain the PPA's "specific

---

[13] In *Busk*, the Supreme Court held that an activity is compensable under the FLSA, as amended by the PPA, if it is an "intrinsic element of [principal] activities and one with which the employee cannot dispense if he is to perform his principal activities." 574 U.S. at 33. Regarding walking time, the Court reiterated: "[I]t is indisputable that the [PPA] evinces Congress' intent to repudiate *Anderson's* holding that such walking time was compensable under the FLSA." *Id.* at 36 (quoting *IBP Inc v. Alvarez*, 546 U.S. 21, 41 (2005)).

classification of certain employee activities as being exempt from compensation." *Id.* at 201; *see* 43 Pa. Stat. § 333.104; 34 Pa. Code § 231.1(b).

In *Heimbach*, the Pennsylvania Supreme Court addressed the question, certified from the Sixth Circuit, of "whether time spent on an employer's premises waiting to undergo, and undergoing**,** mandatory security screening is compensable as 'hours worked' under the PMWA." 255 A.3d at 192.[14] The facts in *Heimbach* were not in dispute. Amazon warehouse workers in Pennsylvania claimed they were owed compensation for the time spent waiting for and undergoing security screening at the end of their shifts. *Id.* at 193. The state supreme court recognized that the FLSA, by its own terms, "establishes only a national floor under which wage protections cannot drop, but more generous protections provided by a state are not precluded." *Id.* at 201 (quoting *Chevalier*, 220 A.3d at 1055). Because the *Busk* decision interpreted the FLSA and not the PMWA, the state supreme court viewed it as neither binding nor persuasive. *Id.* at 201. The court reasoned that the Pennsylvania legislature's decision not to adopt the PPA was "wholly consistent" with the PMWA's stated purpose of addressing unfair ages and

---

[14] The workers brought suit in Pennsylvania state court under both the FLSA and PMWA. *Heimbach*, 255 A.3d at 193-94. The case was removed to the Eastern District of Pennsylvania and then consolidated with a multidistrict litigation matter in the Western District of Kentucky. *Id.* at 194. After the Supreme Court decided *Busk*, the district court dismissed the workers' FLSA claims. *See In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) and Wage & Hour Litig.*, No. 3:14-cv-204-DJH, 2018 WL 4148856, at *3 (W.D. Ky. Aug. 30, 2018), *vacated and remanded,* 856 Fed. Appx. 42 (6th Cir. 2021). The district court interpreted the PMWA claims in line with post-PPA decisions interpreting the FLSA, reasoning that "[i]f the Pennsylvania legislature had intended to expose employers to liability foreclosed by the [PPA], one may reasonably assume it would have done so affirmatively." *Id.* (internal quotations omitted). The workers appealed to the Sixth Circuit, which certified two controlling questions of law to the Pennsylvania Supreme Court: (1) "Is time spent on an employer's premises waiting to undergo and undergoing mandatory security screening compensable as 'hours worked' within the meaning of the [PMWA]?" and (2) "Does the doctrine of *de minimus non curat lex* . . . apply to bar claims brought under the [PMWA]?" *In re Amazon, Inc.*, 942 F.3d 297, 304 (6th Cir. 2019).

"ameliorat[ing] employer practices which serve to artificially depress those wages." *Id.* at 202 (quoting 43 Pa. Stat. § 333.101).

The *Heimbach* court then proceeded to interpret the PMWA "in accordance with its own specific terms." *Id.* It reasoned that the "plain language" of § 231.1(b) provides "four separate categories of an employee's time":

- "time during which an employee is required by the employer to be on the premises of the employer,"
- "[time during which an employee is required by the employer] to be on duty or to be at the prescribed work place,"
- "time spent in traveling as part of the duties of the employee during normal working hours,"
- "and time during which an employee is employed or permitted to work".

*Heimbach*, 255 A.3d at 203 (quoting 34 Pa. Code § 231.1). "[A]ll time which an employee spends performing *any one of these four types of activity* constitutes hours worked." *Id.* at 203-04 (emphasis added). The *Heimbach* court "accept[ed] the Sixth Circuit's finding of fact that Amazon 'requires' employees to remain on their premises" during security screenings and held that time spent waiting for and undergoing the screenings constituted "hours worked." *Id.* at 204.

Target contends that "other comments" in *Heimbach* concerning the definition of "hours worked," but unrelated to security screening, are dicta. DI 64 at 8-9; *see* DI 60-1 at 14; DI 68 at 13-14.[15] We disagree. Dicta is "generally regarded as information in an opinion which is not necessary to the determination of the case." *BouSamra v. Excela Health*, 210 A.3d 967, 976 n.5 (Pa. 2019) (internal quotations omitted); *see In Re Nat'l Football Players Concussion Injury Litig.*, 775 F.3d 570, 583 n.18 (3d Cir. 2014) (defining dictum as "a statement in a judicial

---

[15] Target does not identify the "other comments" that constitute dicta. DI 64 at 9.

opinion that could have been deleted without seriously impairing the analytical foundations of the holding" (quoting *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000))).  Here, the *Heimbach* court's analysis of the definition of "hours worked" was necessary to its ultimate determination about security screening.  By its own words, the *Heimbach* court examined the text of the PMWA and its regulations "*in order to*" answer the certified question.  255 A.3d at 202 (emphasis added).  After analyzing the text of § 231.1, it determined that "hours worked" includes four categories of time.  *Id.* at 203.  Only then, the court held that security screening falls within one of those categories.  *Id.* at 203-04.

Target's attempt to distinguish *Heimbach* also falls flat.  *See* DI 64 at 7-8; DI 60-1 at 13-15; DI 68 at 12-15.  True, the question certified in *Heimbach* concerned security screening and not walking time. This difference does not justify completely disregarding the Pennsylvania Supreme Court's legal rationale.  The *Heimbach* court could have confined its holding to the security screening fact pattern before it, which it did not.[16]  The court used expansive language, such as "Meaning of 'hours worked' under the PMWA," to guide its analysis.  *Heimbach*, 255 A.3d at 196.  And like *Heimbach*, this matter concerns time that warehouse workers spend on a ubiquitous activity that occurs after (and here, before) their primary job-related tasks.  Therefore, we are obligated to follow *Heimbach's* directive that the definition of "hours worked" under the PMWA includes "four separate categories of time," including "time during which an employee is required by the employer to be on the premises of the employer."  *Id.* at 203.

_____

[16] *See, e.g.*, *Commonwealth v. Conley*, 118 A.3d 370, 379 n.13 (Pa. 2015) ("[W]e accordingly limit our holdings to the facts presented here and recognize the outcome might be different with factual variations."); *see also* Daniel B. Rice & Jack Boeglin, *Confining Cases to Their Facts*, 105 Va. L. Rev. 865, 873 n.26 (2019) (collecting cases "in which courts predict that the relevance of a decisional principle employed in the case at hand will likely be 'limited' to the present circumstances").

2.  <u>Section 231.1(b) is not unconstitutionally vague.</u>

Target next argues that § 231.1(b), as applied to the facts of this case, is void for vagueness.  *See* DI 64 at 9-15; DI 60-1 at 15-25, 23 n.11.  "In a void-for vagueness challenge, we must ensure that a statute or standard is fair in that it is not so vague that a party would not know what conduct is prohibited."  *Borden v. School Dist. of Tp. of East Brunswick*, 523 F.3d 153, 166-67 (3d Cir. 2008) (citing *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992)).  "A statute or regulation is void for vagueness if "(1) it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) it fails to provide explicit standards to the enforcing officer."  *Trojan Techs., Inc. v. Pennsylvania*, 916 F.2d 903, 914 (3d Cir. 1990); *Hall v. Zickefoose*, 448 Fed. Appx. 184, 186 (3d Cir. 2011) (per curiam); *see Coulter v. Lindsay*, 159 A.3d 947, 953 (Pa. Super. Ct. 2017).  "The inquiry is completed on a case-by-case basis, and the party opposing the statute or standard must show that it is vague as applied to him."  *Borden*, 523 F.3d at 167; *see Trojan*, 916 F.2d at 915 ("[A]ppellants' burden is to show that the statute is vague with respect to *their* activity.").

The purpose of the void-for-vagueness doctrine is "only to give 'fair warning' of prohibited conduct."  *San Filippo*, 961 F.2d at 1135 (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)).  "Lesser degrees of specificity are required to overcome a vagueness challenge in the civil context than in the criminal context . . . because the consequences in the criminal context are more severe."  *Id.*  In addition, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow and because businesses . . . can be expected to consult relevant legislation in advance of action."  *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982).

Notably, our judgment "as to the vagueness or not of a state statute must be made in the

light of prior state constructions of that statute." *Wainwright v. Stone*, 414 U.S. 21, 22 (1973).

When assessing the vagueness of state laws, "we must take the statute as though it read precisely

as the highest court of the State has interpreted it." *Id.* at 22-23 (internal quotations omitted);

*see Spence*, 623 F.3d at 216 ("When ascertaining Pennsylvania law, the decisions of the

Pennsylvania Supreme Court are the authoritative source."); *Dailey v. City of Phila.*, 819 Fed.

Appx. 71, 74 (3d Cir. 2020) ("A federal court must, of course, consider any limiting

construction that a state court . . . has proffered" (quoting *Hoffman Ests.*, 455 U.S. at 494 n.5)).

When interpreting Pennsylvania law, we apply its rules of statutory interpretation. *In re Trs. of*

*Conneaut Lake Park, Inc.,* 855 F.3d 519, 523 (3d Cir. 2017).

   First, Target takes issue with the construction of § 231.1(b).  It contends that "alternative

constructions" of § 231.1(b) leave it with "no reasonable idea" of how to apply the regulation to

class members' time.  DI 64 at 11.  For example, Target claims that general construction

principles of Pennsylvania law favor a disjunctive, not conjunctive, interpretation of "hours

worked."  DI 60-1 at 28-29. [17]  Target expanded on this point at oral argument, asserting that it

fulfills the PMWA as long as it pays class members for time "on the premises of the employer,"

time "on duty," *or* time "at the prescribed work place."  According to Target, *Heimbach*

embodies a "mistaken interpretation" of § 231.1(b).  *Id.* at 29.

   These arguments — whether that the construction of § 231.1(b) renders it fatally vague

or that § 231.1(b) should be read in the disjunctive — ignore our mandate to consider the

regulation as read by the highest court of the state.  *See Wainwright*, 414 U.S. at 22-23.  In

---

[17] Target cites to Pennsylvania case law and the Pennsylvania Code & Bulletin Style Manual.  DI 60-1 at 28.  It also argues that § 231.1(b) is "fatally ambiguous" when construed according to the Pennsylvania Statutory Construction Act.  *Id.* at 27; DI 64 at 11-13; *see* 1 Pa. Stat. §§ 1501-1991.

*Heimbach*, the Pennsylvania Supreme Court read § 231.1(b) to "include[] four separate categories of an employee's time." 255 A.3d at 203. It explained that "all time which an employee spends performing *any one of these four types of activity* constitutes hours worked." *Id.* at 203-04 (emphasis added). District courts have followed suit. *See, e.g.*, *Beauregard v. Broadway Elec. Serv. Corp.* No. 2:21-cv-1600, 2022 WL 2293969, at *5 (W.D. Pa. June 24, 2022) (reciting *Heimbach* standard); *Gibel v. Iron Cumberland, LLC*, No. 23-2050, 2024 WL 4264969, at *3 (W.D. Pa. Aug. 7, 2024) (same). We decline Target's invitation to disregard the authority of the Pennsylvania Supreme Court and interpret § 231.1(b) anew.

Second, Target argues that specific phrases used in § 231.1(b) — including "required by the employer," "on the premises of the employer," and "convenience of the employee" — are void for vagueness. DI 60-1 at 19-27; DI 64 at 14-15. PMWA regulations do not define these phrases, and Pennsylvania courts have not explicitly addressed their meaning.[18]

Beginning with "required by the employer," Target argues that "required" can be defined in different ways, and it is "unclear at what point" Target required class members to do "any specific task." DI 60-1 at 2. Target claims it is unclear whether Mr. Davis was required to be on the premises when he entered the parking lot, or from the moment he entered the building.[19] *Id.*

---

[18] We note, however, that numerous decisions have applied the definition of "hours worked" in § 231.1(b). *See, e.g.*, *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969 (Pa. Super. Ct. 2009) (concluding that "hours worked" has been defined as a term of art, and the trial court should not have sustained an objection to plaintiffs' claim under the PMWA for time spent "donning, doffing, and sanitizing . . . protective gear" at the beginning and end of their shifts); *Bonds v. GMS Mine Repair & Maint., Inc.*, 2020 WL 7663844, at *7 (Pa. Sup. Ct. Dec. 24, 2020) (denying argument that Department of Labor exceeded its authority in passing § 231.1(b) and noting that "the definition of 'hours worked' has been in place for over 40 years and has not been disturbed by the legislature").

[19] Target repeatedly asserts that Mr. Davis seeks overtime compensation from the time he enters the parking lot, time spent donning a harness, or from the moment he enters the building.

at 22. These examples miss the point. Target must show that "required by the employer" is vague as applied to the activity at issue: walking time. *See Trojan*, 916 F.2d at 915. It has not done so. Target contends "the facts here are clear that nothing was required of Class Members other than to clock in by the time their shifts were to begin." DI 60-1 at 22. But this statement does not dispute the clarity of the "required by the employer" standard; it disputes whether the standard was, in fact, met. We address this factual question in turn.

Similar reasoning applies to "on the premises of the employer." A person of ordinary intelligence would understand that Target's "premises" include its Chambersburg warehouse. The various dictionary definitions of "premises" cited by Target only support this conclusion. *See* DI 60-1 at 22-23. Despite slight variations, each definition includes the term "building," which a warehouse surely is. Target identifies areas such as the distribution center sidewalk or parking lot that may or may not fall within the "premises." *Id.* at 23. But again, Target has not shown that "on the premises of the employer" is vague as applied to intra-facility walking time.

Target also has not shown that the "convenience of the employee" exception to "hours worked" is unconstitutionally vague. Target argues that if we construe "convenience" to mean "advantage," walking time is arguably for class members' convenience because they go to work to earn wages (i.e., an advantage). DI 60-1 at 26. Taking this argument to its logical conclusion, the convenience exception would apply to all time performing paid work on an employer's premises. This outcome runs contrary to Pennsylvania's Rules of Statutory Construction, which instruct us to presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. Stat. § 1922(1); *see Dailey v.*

---

*See* DI 64 at 14-15; DI 60-1 at 22, 25. As outlined in the attached order, Mr. Davis, on behalf of the class, seeks compensation for walking time only. Target must show that § 231.1(b) is vague as applied to walking time.

*City of Phila.*, 417 F. Supp. 3d 597, 619 (E.D. Pa. 2019), *aff'd,* 819 Fed. Appx. 71 (3d Cir.

2020).  When read in context of the complete "hours worked" definition, Target's interpretation

of the convenience exception makes no sense.  *See Borden*, 523 F.3d at 167 (noting that a term

"must be read in the context of the entire paragraph discussing the prohibition").  We fail to see

how the exception provides Target with inadequate notice or invites arbitrary enforcement.

      3.  <u>Mr. Davis is entitled to partial summary judgment.</u>

      Having determined that *Heimbach* controls, and that § 231.1(b) is valid, we now assess

whether a genuine issue of material fact remains for trial.  Mr. Davis argues there is no factual

dispute that walking time is time that Target requires class members to be on its premises.  DI 59

at 16-18.  Target argues that class members were not "required" to be on Target's premises

because they were not "under any type of compulsion" to work at the distribution center.  DI 64

at 15-16.

      As a preliminary matter, we disagree with Target's interpretation of "required."  The

plain meaning of "required" as used in § 231.1(b) does not entail forced action or lack of "free

will."  *Id.*[20]  Such an interpretation would lead to an absurd result wherein the act of *choosing* to

---

[20] Besides Target's assertion that class members were not "under any type of compulsion
(*i.e.*, required[]), whether legal, contractual, or otherwise" to work at the distribution center, DI
64 at 15, the parties did not brief whether "required" as used in § 231.1(b) requires a contractual
agreement.  In *Pennsylvania Federation of Brotherhood of Maintenance of Way Employees v.
National Railroad Passenger Corp. (AMTRAK)*, 989 F.2d 112 (3d Cir. 1993), the Third Circuit
addressed whether resolution of a PMWA claim brought by AMTRAK railroad workers subject
to a collective bargaining agreement (CBA) necessarily depended on the meaning of the CBA so
that plaintiffs were subject to mandatory arbitration.  *Id.* at 115.  In this context, where the
AMTRAK employees were already subject to a CBA, the Third Circuit held that the PMWA
claim was preempted because "only an interpretation of the [CBA] can tell us if these AMTRAK
employees are *required* to travel on the AMTRAK vehicles after their works shifts are done."
*Id.*  We do not take this to mean that, outside of the CBA context, an act is only "required" under
§ 231.1(b) if it is outlined in a contract between the employee and employer.

go to work would deem said work non-compensable.  *See* 1 Pa. Stat. § 1922(1); *cf. Nissan Motor*

*Acceptance Corp. v. Infiniti of Englewood, LLC*, No. 18cv17228, 2023 WL 4199905, at *4

(D.N.J. June 26, 2023) (distinguishing between "require" and "coerce").   Rather, we find

instructive dictionary definitions of "require" such as "to ask for authoritatively or imperatively";

"to demand as necessary or essential . . . make indispensable"; and "demand of (one) that

something be done or some action taken."[21]

      Against this backdrop, Mr. Davis has met his burden to show the absence of a genuine

factual dispute.  *See Nat'l State Bank*, 979 F.2d at 1582.  The undisputed facts show that class

members enter and exit the Chambersburg distribution center at a single location.  DI 58-1 ¶ 10.

From there, they must report to their home departments to attend start-up meetings and begin

their tasks.  *Id.* ¶¶ 22-23.  To get from the entrance to their home departments, and vice versa at

the end their shifts, class members are to walk along the designated path.  DI 60-2 ¶ 8; DI 58-5 at

7; DI 63-3 at 7.  They receive training on using the walking path, and managers remind them to

follow it.  DI 58-1 ¶¶ 15, 16.  By virtue of how Target organizes its facility, and pursuant to

Target's explicit demands, class members are required to walk from the warehouse entrance to

their assigned home departments before shift start.  To leave for the day, they are required to

walk from their home-department time clocks back to the warehouse entrance.  This walking

time can only occur on Target's premises.  Without it, class members cannot do their jobs.

      The record does not reveal evidence to the contrary.  First, Target points to Mr. Davis's

testimony that some employees were "all but running" at the end of their scheduled shifts, DI 60-

2 ¶ 25, and that some people "wouldn't stay in the . . . path," DI 60-3 at 45.   For purposes of Mr.

---

[21] *Require*, Merriam-Webster, https://unabridged.merriam
webster.com/unabridged/required (last visited February 13, 2025).

Davis's motion, we construe the record in Target's favor and accept that class members may proceed down the path at different speeds and sometimes stray from the path itself. We also infer that some class members may fail to use their home-department time clocks, even though Target policy directs them to do so. *See* DI 64-1 ¶ 23. These facts may impact a jury's assessment of damages, but they do not create a dispute as to whether Target requires walking time on its premises.[22]

Second, Target argues that class members are "free to use the time as they please" before and after their scheduled shifts.[23] DI 64 at 15 n.5. For example, Mr. Harlan testified that PTMs can drop off their belongings in breakrooms before beginning their shifts. *See* DI 64-1 at 12 ¶ 3; DI 58-5 at 8. But Mr. Davis does not seek compensation for time spent in the breakroom or bathroom — only walking time. Any dispute about the amount of time that class members spend on walking versus other activities may be relevant to damages, but not liability.[24]

_____

[22] Similarly, the fact that Target policy instructs class members to "never perform any work off the clock for any reason" — and testimony from Target's manager, Benjamin Harlan, that PTMs are "not to be doing any type of work" until the shift bell sounds — does not create a dispute as to whether Target requires walking time. *See* DI 69-1 ¶ 1; DI 58-10 at 26. These assertions only underline the impetus for this lawsuit, which is that Target does not view walking time as compensable work.

[23] In its additional statement of undisputed facts, Target asserts that class members can "use their time as they please" when they are not clocked in, including "using the restroom, filling their water bottles, relaxing in the breakroom, and eating a meal." DI 64-1 at 12 ¶ 3. Outside of Mr. Harlan's statement that PTMs could drop off their belongings before their shifts, the cited testimony does not fully support Target's assertion. *See id.*; DI 58-5 at 8; DI 60-3 at 58. Nonetheless, for purposes of Mr. Davis's motion for partial summary judgment, we assume, in Target's favor, that class members can do these activities before shift start and after clocking out.

[24] Furthermore, the *Heimbach* court explicitly rejected the argument that "only time in which employees are required to be on their premises "working" — *i.e.*, engaged in duties or tasks directly related to the specific requirements of their job or occupation — can constitute 'hours worked' for purposes of the PMWA." 255 A.3d at 204.

Third, Target argues that walking time triggers the exception under § 231.1(b) for "time spent on the premises of the employer for the convenience of the employees," as class members "*decided* to go to work" at the distribution center.  DI 64 at 16 n.6 (emphasis added).  This argument echoes Target's claim that "convenience" is a vague term, and it suffers from the same logical flaw.  If we follow Target's logic, all time during which an employee chooses to be at work is exempted from "hours worked."  That cannot be right.  And while we assume that class members sometimes leave the walking path to use the restroom, grab a snack, or take a call, this matter does not require us to determine whether those activities fall within the convenience exception.[25]  A reasonable jury could not conclude that walking time is time during which class members are on Target's premises for their own convenience.

Target's remaining arguments sound in public policy.  *See* DI 64 at 14.  We note only that Target's concerns about hypothetical future litigation do not give rise to a trial-worthy dispute in this litigation.

Construing the record in Target's favor, there is no genuine dispute as to whether walking time is time during which Target requires class members to be on its premises.  A reasonable jury could not find in Target's favor on this point.  As a matter of law, walking time is compensable under the PMWA.  We grant Mr. Davis's motion for partial summary judgment.  Applying the same legal analysis, we deny Target's motion for summary judgment as to liability.  The issue of damages will proceed to trial.

**B.    Class Members Without Overtime Damages**

During discovery, Mr. Davis hired Dr. Liesl Fox to calculate overtime backpay for

---

[25] It is undisputed that Target policy prohibits class members from using personal devices on the warehouse floor and restricts the consumption of food and beverages to designated areas, like breakrooms and patios.  DI 63-1 at 14 ¶¶ 1, 2; DI 63-7 at 7-8.

identified class members.  DI 60-2 ¶ 28.  Using Dr. Fox's calculations, Target identified 2,195

class members with no overtime damages during the relevant class period.  *Id.* ¶ 32.  Target

moves for summary judgment as to these 2,195 class members.  DI 60-1 at 31.  Mr. Davis does

not oppose dismissal of these class members but requests that any dismissal be limited to claims

for overtime damages accrued through December 30, 2023, the last date for which Target has

provided payroll data.  DI 63 at 18-21.

As the parties point out, we certified this class anticipating that some class members may

have no overtime damages.  *See* DI 35 at 10.  Because we do not know whether the parties intend

to update the payroll data again before trial, we will grant Target's motion in part.  The 2,195

class members identified as having no overtime damages through December 30, 2023 are

dismissed without prejudice.[26]

## V.    CONCLUSION

For the foregoing reasons, we grant Mr. Davis's motion for partial summary judgment as

to liability.  The time during which class members spend walking between the distribution center

entrance and their assigned home departments before shift start, and between their home-

department time clocks and the distribution center entrance after clocking out, is compensable

under the PMWA.  The damages case will proceed.  Accordingly, we deny Target's motion for

summary judgment as to liability.  We grant in part Target's motion for summary judgment as to

the 2,195 class members without overtime damages through December 30, 2023.  These 2,195

class members are dismissed without prejudice.  An appropriate order accompanies this opinion.

---

[26] At oral argument, the parties apparently had not resolved whether they will continue to
update the payroll data.  On Target's motion, or on stipulation by the parties, we will revisit final
judgment as to these 2,195 class members at a later date.