UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY DAVIS, on behalf of himself and others similarly situated, | : | 2:23-cv-00089-JFM |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TARGET CORPORATION, | : | |
| Defendant. | : | |

**PLAINTIFF'S BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR "PRELIMINARY APPROVAL" OF CLASS ACTION SETTLEMENT AND OTHER RELATED RELIEF**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................ 1

    A.   Factual and Procedural Background ..................................................................... 1

    B.   Damages ............................................................................................................... 2

    C.   Settlement Discussions ........................................................................................ 3

    D.   The Settlement Terms .......................................................................................... 4

    E.   The Notice and Payment Process......................................................................... 6

    F.   The Release .......................................................................................................... 7

III.  ARGUMENT ................................................................................................................. 7

    A.   Preliminary Approval Is Warranted...................................................................... 7

    B.   The Notice Form and Protocols Warrant Approval................................................ 13

IV.   CONCLUSION............................................................................................................. 14

# **TABLE OF AUTHORITIES**

## Cases

*Altnor v. Preferred Freezer Services, Inc.*
   197 F. Supp. 3d 746 (E.D. Pa. 2016) ...................................................................... 12

*Del Valle v. Empire Home Health Care, Inc.*,
   2021 WL 5534703, 2021 U.S. Dist. LEXIS 153355 (E.D. Pa. Aug. 3, 2021) .................... 8, 12

*Flores v. Eagle Diner Corp.*,
   2019 WL 394335, 2019 U.S. Dist. LEXIS 141743 (E.D. Pa. Aug. 21, 2019) ........................ 12

*Galt v. Eagleville Hospital*,
   310 F. Supp. 3d 483 (E.D. Pa. 2018) ...................................................................... 11

*Hall v. Accolade, Inc.*
   2019 WL 3996621, 2019 U.S. Dist. LEXIS 143542 (E.D. Pa. Aug. 23, 2019) ......... 8, 9, 11, 12

*In re Baby Products Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013) .................................................................................. 10

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*,
   55 F.3d 768 (3d Cir. 1995) ...................................................................................... 7

*In re Janney Montgomery Scott LLC Financial Consultant Litig.*,
   2009 WL 2137224, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ........................ 12

*In re NFL Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) .................................................................................... 9

*In re NFL Players' Concussion Injury Litig.*,
   961 F. Supp. 2d 708 (E.D. Pa. 2014) ................................................................... 1, 8

*In re Wawa Inc. Data Security Litig.*,
   2021 WL 3276148, 2021 U.S. Dist. LEXIS 142025 (E.D. Pa. July 30, 2021) ........................ 9

*Myers v. Jani-King of Philadelphia, Inc.*,
   2019 WL 4034736, 2019 U.S. Dist. LEXIS 144929 (E.D. Pa. Aug. 26, 2019) ..................... 11

*Roxberry v. Snyders-Lance, Inc.*,
   2017 U.S. Dist. LEXIS 193573 (M.D. Pa. Nov. 15, 2017) ...................................... 12

*Solkoff v. Pa. State Univ.*,
   435 F. Supp. 3d 646 (E.D. Pa. 2020) ...................................................................... 11

## Statutes

Class Action Fairness Act .......................................................................................... 1

Pennsylvania Minimum Wage Act .......................................................................... 1, 2, 4

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ passim

## I.    <u>INTRODUCTION</u>

Plaintiff Timothy Davis ("Plaintiff") files this motion seeking preliminary approval of the settlement of this class action lawsuit, which alleges that Defendant Target Corporation ("Defendant" or "Target") violated the Pennsylvania Minimum Wage Act ("PMWA") by failing to pay him and other warehouse employees overtime wages for pre-shift and post-shift walking time within Defendant's Chambersburg Distribution Center in Pennsylvania. *See generally* DI 1-4. The Court has certified the class and held that the walking time is compensable. However, the classwide damages associated with such walking time (as well as the attorney's fees/expenses owed to Plaintiff's counsel) remain in dispute. Now, the settlement must be reviewed for fairness per Civil Rule 23's "two-stage" process, which has been described as follows:

> Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make "a preliminary fairness evaluation." If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement. At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement. If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval.

*In re NFL Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014) (internal citations omitted).

For the reasons detailed below, Plaintiff submits that preliminary approval of the Parties' settlement is warranted.

## II.    <u>BACKGROUND</u>

### A.    **Factual and Procedural Background**

Plaintiff filed this lawsuit in the Court of Common Pleas for Philadelphia County on November 29, 2022. DI 1-4. On January 9, 2023, Target removed the case to this court under the Class Action Fairness Act ("CAFA"). ECF No. 1. Plaintiff asserts that, under the PMWA, he and

other employees at Target's Chambersburg, Pennsylvania Distribution Center are entitled to overtime wages for time associated with walking within the Distribution Center at the beginning and end of the workday. *See* DI 1-4.

As this Court is aware, the Parties have actively litigated this case for over two years. Among other things, the Parties conducted extensive written discovery, numerous depositions, and expert discovery. In particular, during discovery, Defendant produced class-wide pay and time data, and employee history data; and maps of the Distribution Center that allowed Plaintiff to quantify class-wide damages. The Parties also briefed, *inter alia*, class certification and decertification, cross-motions for summary judgment, and *Daubert* challenges to Plaintiff's experts.

Several key rulings by this Court preceded the Parties' settlement in this case. In particular, on December 1, 2023, the Court granted Plaintiff's motion for class certification, appointed Plaintiff's counsel as Class Counsel, and certified a class of "All Progression Team Members who have been employed by Target at its Chambersburg Distribution Center at any time since November 29, 2019." DI 36. On February 19, 2025, the court entered summary judgment for Plaintiff and the Class regarding liability, finding that the walking time at issue is time that is required to be paid under the PMWA; and also denied Target's motion to decertify the class. *See* DI 88-89.

Following the Court's summary judgment ruling, the Court held a conference with the Parties on April 7, 2025 and set a trial date for September 8, 2025.

## B.    Damages

During discovery, class counsel retained an industrial engineer (Robert Radwin, Ph.D.) to quantify the walk times to and from each *intra*-warehouse timeclock and a statistician/data analyst (Liesl Fox, Ph.D.) to determine the unpaid overtime wages associated with such walk

time based on the class-wide timekeeping and payroll data produced by Target. *See* DI 89 at ¶ 2. Based on this analysis, Plaintiff would contend at trial that 2,347 Class Members are owed **$1,250,736.12** in unpaid overtime wages for the period from November 29, 2019 through September 8, 2025. Those Class Members are identified in Exhibit A to the Agreement. *See* DI 109-1 (Agreement) at Ex. A. Target disputes the amount of alleged back wages owed.

In addition, the certified class also includes 753 individuals for whom Target's timekeeping/payroll data does not reflect hours worked. These 753 Class Members are identified in Exhibit B to the Agreement. *See* DI 109-1 (Agreement) at Ex. B. Based on counsels' investigation to date, it appears that the great majority of these Class Members never performed any work.[1] Specifically, 653 of these Class Members do not appear anywhere in the employment history data (which list employees' dates of employment, work locations, and titles held), payroll data, or timekeeping data produced by Target.[2] As explained in Section I.D *infra*, those Class Members will be awarded a minimum payment and allowed an opportunity present information if they dispute Target's lack of records for them.

### C.    Settlement Discussions

Following the April 7, 2025 conference with the Court setting the trial date, the Parties agreed to explore class-wide settlement discussions in advance of trial. Target supplemented its employment history, pay and time data for Class Members, which Plaintiff used both to supplement the class-wide damages analysis prepared by Dr. Fox for use at the anticipated trial and to inform possible settlement discussions. Plaintiff provided Target's counsel a detailed breakdown of this supplemental analysis to Target's counsel at the beginning of July 2025. Over

---

[1]    This is not unusual. In wage and hour class actions, the class list often includes the names of individuals who never reported for work after being hired.

[2]    For the remainder, the Class Members appear in some records produced by Target but for whom backpay could not be calculated due to missing data.

the course of the next month, the Parties had numerous detailed exchanges. Following these exchanges, the Parties reached an agreement in principle to resolve this matter and so notified the Court. *See* DI 102, 104.

### D.    The Settlement Terms

The settlement requires Target make a payment of $1,850,000 plus any associated employer-side taxes and proposes the following distribution (subject to Court approval): **(i)** $1,196,834 will be paid to the Class Members; **(ii)** $616,666 will be paid to Class Counsel for attorneys' fees, costs; **(iii)** an amount not to exceed $21,500 will be paid for the costs of settlement administration; and **(iv)** a $15,000 Service Award will be paid to Plaintiff. *See* DI 109-1 (Agreement) at ¶¶ 7, 26, 29.

If the Court disapproves any portion of Class Counsel's requested attorney's fees/expenses or Plaintiff's requested Service Award, the disapproved monies will enhance the payments to Class Members. *See id.* at ¶¶ 26, 29.

The lawsuit covers the time period between November 29, 2019[3] and September 8, 2025 (hereafter, the "Class Period"). The Parties' Agreement covers a settlement class that stems directly from the Class this Court previously certified in December 2023. *See* DI 35. Specifically, the settlement Class is defined as all individuals identified on the Class List produced by Target as TARGET-TDAVIS 000429 on January 12, 2024 who have been employed as Progression Team Members at Defendant's Chambersburg Distribution Center at any time between November 29, 2019 and September 8, 2025, excluding: (1) the 1,957 individuals previously dismissed by the Court's summary judgment order, as amended (ECF No. 101); and (2) the 20 individuals who previously elected to exclude themselves from this Action

---

[3]    Three years prior to the commencement of this action, per the PMWA's three-year limitations period.

(ECF No. 52). DI 109-1 at ¶ 1. After some adjustments to the certified class, *see* DI 101 & 107-108; the lawsuit – and the settlement reached by the parties – covers 3,100 Class Members. *See* DI 109-1 (Agreement) at ¶ 1.

The settlement provides that each Class Member will receive a Base Payment of $20 plus, for Class Members for whom Target's records show that they are owed unpaid overtime according to Plaintiff's damages calculations (*i.e.*, those Class Members listed in Exhibit A to the Agreement), an additional proportionate amount based on his or her estimated unpaid wages. *See* DI 109-1 at ¶ 21.

For those Class Members identified in Exhibit B to the Agreement, for whom Target's timekeeping/payroll record do not reflect hours worked during the Class Period, such Class Members will be provided the opportunity dispute that they did not work any overtime weeks as an hourly Progression Team Member during the Class Period. Specifically – and as is explained in the Notice Form to be issued to Class Members in Exhibit B – such Class Members may submit information to the settlement administrator and attestation and any other documentation to demonstrate that they worked qualifying weeks during the Class Period. *See* DI 109-1 (Agreement) at ¶ 24 & Ex. D. Counsel for the Parties will confer in good faith to resolve any such disputes, with the settlement administrator making the final determination in the event the Parties cannot reach agreement. *See id.* Further, a Reserve Fund of $100,000 shall be set aside to resolve any such disputes by the Class Members identified in Exhibit B. Any amounts remaining in the Reserve Fund after resolution of any such disputes will be added to the Net Settlement Fund after notice and prior to distribution, to be included in Class Members' Settlement Awards. *See* DI 109-21 (Agreement) at ¶ 15.

###### E.    The Notice and Payment Process

If this settlement is preliminarily approved, Analytics Consulting ("the Administrator")[4] will mail to each Class Member a detailed notice form that describes the litigation and the settlement and is "individualized" to inform each Class Member of his/her expected Payment Amount and the manner by which such amount was calculated. *See* DI 109-1 at ¶ 41 (Agreement) & Exs. C & D (Notices of Settlement). In addition, the notice forms:  explain how Class Members can exclude themselves from or object to the settlement; describes the scope of the release; identifies class counsel; describes the fees/expenses sought by class counsel and the service award sought by Plaintiff; and informs Class Members of the time and location of the final fairness hearing. *See generally id.* at Exs C & D.[5] The Administrator is required to follow detailed procedures to ensure that Class Member addresses are accurate and updated, and to re-mail any notice forms that are returned by the Postal Service as undeliverable. *See* DI 109-1 at ¶¶ 39, 42.

Target's settlement payment is entirely non-reversionary, meaning that ***no portion*** of the $1,850,000 settlement fund will be returned to Target. Class Members are *not* required to complete a "claim form" or any other document in order to receive a settlement payment. *See id.* at ¶¶ 23, 25. Rather, the Administrator will mail settlement checks to all Class Members other than those who affirmatively exclude themselves from the settlement. *See id.* at ¶ 23.[6] Any

---

[4]    *See generally* https://www.analyticsllc.com/.

[5]    As explained above, the Notice of Settlement to Class Members for whom Target's timekeeping/payroll record do not reflect hours worked during the Class Period will also have an opportunity to dispute Target's lack of records for them.

[6]    Because the Class Member addresses were already vetted in issuing the notice forms, the Class Members addresses will be especially reliable when the Administrator issues the settlement checks. Notwithstanding, as with the notice forms, the Administrator will follow strict procedures to ensure that any returned checks are re-mailed to updated addresses.

proceeds associated with uncashed checks will be donated to the Pennsylvania IOLTA Board. *See id.* at ¶ 25.

**F.      The Release**

If this settlement is approved, Class Members who do not opt out of the settlement will be bound by a release that is limited to this litigation. Specifically, Class Members release "any and all claims, rights, demands, liabilities, and causes of action of every nature and description that accrued during the Class Period, whether known or unknown, that either were raised in the Action, or are reasonably related to the claims raised in the Action, including all such claims for allegedly unpaid wages or compensation of any kind, liquidated damages, penalties, attorneys' fees, costs, expenses, interest, settlement administrator costs, service awards, and any other monetary claims related to the payment of wages." *See* DI 109-1 (Agreement)*. at* ¶ 14.

**III.    ARGUMENT**

This settlement represents an excellent outcome for the Class Members and is the result of arms-length bargaining conducted after a substantial discovery and litigation. As discussed herein, the Court should preliminarily approve the settlement, endorse the contemplated notice protocols and form, and schedule a final fairness hearing:

**A.      Preliminary Approval Is Warranted.**

Class action settlements must be approved by the Court as fair. *See* Fed. R. Civ. P. 23(e)(2).[7] As noted at page 2 *supra*, "preliminary" approval of the settlement results in Class Members receiving notice of the settlement. Then, after Class Members have had an opportunity

---

[7]      The Third Circuit has observed that "[t]he law favors" class action settlements because "substantial judicial resources can be conserved by avoiding formal litigation" and because parties "gain significantly from avoiding the costs and risks of a lengthy and complex trial." *In re GMC Pick-Up Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

to object to or exclude themselves from the settlement,[8] the Court will preside over a hearing aimed at determining whether the settlement warrants "final approval." *See In re NFL*, 961 F. Supp. 2d at 713-14.

The Third Circuit has never endorsed a specific list of criteria for district courts to consider in assessing the propriety of preliminary approval. However, the Federal Rules of Civil Procedure were amended in 2018 to address this topic. *See Hall v. Accolade, Inc.*, 2019 WL 3996621, 2019 U.S. Dist. LEXIS 143542, at *4-5 (E.D. Pa. Aug. 23, 2019). Specifically, Civil Rule 23(e)(1), entitled "Grounds for Decision to Give Notice," provides:

> (e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

> (1) *Notice to the Class.*

> (A) *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

> (B) *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.[9]

Fed. R. Civ. P. 23(e)(1); *see, e.g.*, *Del Valle v. Empire Home Health Care, Inc.*, 2021 WL

---

[8]    Under Rule 23(e)(4), a court may refuse to approve a settlement unless it gives class members of a previously certified class a new opportunity to be excluded.

[9]    The requirement under Rule 23(e)(1)(B)(ii) that a court "certify the class for purposes of judgment on the proposal" does not apply where, as here, the Court has already certified the class. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("The amended rule also specifies the standard the court should use in deciding whether to send notice—that it likely will be able both to approve the settlement proposal under Rule 23(e)(2) and, *if it has not previously certified a class*, to certify the class for purposes of judgment on the proposal.") (emphasis added).

5534703, 2021 U.S. Dist. LEXIS 153355, at *1 (E.D. Pa. Aug. 3, 2021); *In re Wawa Inc. Data Security Litig.*, 2021 WL 3276148, 2021 U.S. Dist. LEXIS 142025, at *33-34 (E.D. Pa. July 30, 2021).

Here, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)." because each Rule 23(e)(2) factor is likely to be satisfied at the final approval stage:

**Rule 23(e)(2)(A) – Whether Plaintiff and class counsel "have adequately represented the class":**  This factor focuses "on the actual performance of counsel acting on behalf of the class." *Hall*, 2019 U.S. Dist. LEXIS 143542, at *8-9 (internal quotations omitted); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims"). Here, this factor is likely to be satisfied at the final approval stage because, prior to settlement, Plaintiff and Class Counsel effectively litigated this case at length on behalf of the class. Among other things, the Parties engaged in extensive discovery and litigation, including written discovery and depositions, expert discovery, and contested class certification and summary judgment. *See* Section I.A *supra*.

**Rule 23(e)(2)(B) – Whether the settlement "was negotiated at arm's length":**  This factor is likely to be satisfied at the final approval stage because negotiations were at arms-length. *See* Section I.C, *supra*.

**Rule 23(e)(2)(C)(i) – Whether the relief "is adequate, taking into account the costs, risks, and delay of trial and appeal":**  This factor "balances the relief that the settlement is expected to provide to class members against the cost and risk involved in pursuing a litigated outcome." *Hall*, 2019 U.S. Dist. LEXIS 143542, at *10 (internal quotation omitted). Such analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for

comparison with the settlement figure." *Id.* (internal quotation omitted). As the Third Circuit has observed, "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution – a task particularly ill-advised given that the likelihood of success at trial . . . can only be estimated imperfectly." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013).

This factor is likely to be satisfied at the final approval stage. With respect to the "**costs**" and "**delays**" associated with continued litigation, the Parties would proceed to trial on the question of damages. At trial, Target would vigorously challenge the reliability of Dr. Radwin's walk-time estimates. Likewise, Target would contest (1) the amount of alleged damages calculated by Dr. Fox, as well as the assumptions and extrapolations included in her assessment, and (2) the reasonableness of Plaintiff's asserted fees and costs. Moreover, absent settlement, Target would almost certainly appeal the Court's summary judgment decision, causing the ultimate resolution of this matter to be significantly delayed.

Regarding the settlement's "**adequacy**," while Class Counsel are confident that a class-wide damages trial would be successful, they cannot ignore the roadblocks that would be erected by Target in the absence of settlement. As noted above, Target vigorously disputes Plaintiff's walk-time estimates and argue that such estimates do not reflect the "real-life" environment at the Chambersburg warehouse. *See*, *e.g.*, DI 88 at 20-21 (recognizing Target's arguments that "class members proceed down the [walking] path at different speeds" and "may fail to use their home-department time clocks" and acknowledges that such evidence "may impact a jury's assessment of damages"). In the absence of settlement, Target would produce witnesses to testify to this, and the factfinder may well credit such evidence.

Viewed against such risks, the proposed settlement achieves a substantial result.

Specifically, the $1,850,000 settlement fund equates to approximately **148%** of the class

members' allegedly unpaid overtime wages.[10] As such, even if the Court approves the requested

attorneys' fees for Class Counsel, all litigation costs, costs of the Administrator, and the

requested Service Award to Plaintiff, the Class Members still will recover over 95% of the

unpaid wages calculated by Dr. Fox. In the absence of settlement, it is quite possible that the

factfinder would conclude that the unpaid walk time falls below the gross payment achieved

through this settlement.

> *Rule 23(e)(2)(C)(ii) – Effectiveness of the "proposed method of distributing relief" and*
> *"the method of processing class-member claims"*:  This factor is likely to be satisfied at the

final approval stage because Class Members are not required to file claim forms in order to

receive payments and the notice forms clearly describe the process for Class Members to object

to, or exclude themselves, from the settlement. *See Hall*, 2019 U.S. Dist. LEXIS 143542, at *11-

12.

> *Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorney's fee award:*

This factor is likely to be satisfied at the final approval stage because Class Counsel's request for

fees and litigation expenses totaling approximately 33.33% of the settlement fund is consistent

with the fees/expenses commonly approved by this Court in other wage-rights class action

settlements. *See*, *e.g.*, *Myers v. Jani-King of Philadelphia, Inc.*, 2019 WL 4034736, 2019 U.S.

Dist. LEXIS 144929, at *29 (E.D. Pa. Aug. 26, 2019) ("requested fee of one-third (1/3) of the

settlement fund is reasonable in comparison to awards in other cases"); *Galt v. Eagleville*

*Hospital*, 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018) (characterizing 35% fee as "within the range

---

[10]    *See Solkoff v. Pa. State Univ.*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020) (noting, when evaluating a settlement's fairness, "the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees.")

of fee awards accepted by courts in the past"); *Altnor v. Preferred Freezer Services, Inc.* 197 F. Supp. 3d 746, 768-69 (E.D. Pa. 2016) (characterizing 33% fee recovery as "benchmark"). As such, the requested fees/expenses are not an impediment to preliminary approval, with the understanding that the requested fees/expenses will be carefully scrutinized pursuant to the Third Circuit's *Gunter* factors at the final approval stage. *See Del Valle*, 2021 U.S. Dist. LEXIS 153355, at *2 n.1 (review of attorney's fees deferred until final approval where fee request "not clearly excessive or unreasonable"); *accord Flores v. Eagle Diner Corp.*, 2019 WL 394335, 2019 U.S. Dist. LEXIS 141743, at *21 (E.D. Pa. Aug. 21, 2019); *Hall*, 2019 U.S. Dist. LEXIS 143542, at *12.[11]

**Rule 23(e)(2)(C)(iv) – Any agreement required to be identified under Rule 23(e)(3):**
Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." Here, no such agreements exist other than the executed settlement agreement.

**Rule 23(e)(2)(D) – Whether the settlement treats class members equitably relative to each other:** This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others." *Fed. R. Civ. P. 23, Advisory Committee Notes to December 1, 2018 Amendments*. This factor is likely to be satisfied at the final approval stage because the allocation methodology contemplated in the Agreement puts Class Members on equal footing. Specifically, it provides that each Class Member will receive the same Base Payment, plus an additional amount

---

[11]    Similarly, courts generally defer any assessments of requested service award until the final approval stage. *See*, *e.g.*, *Hall*, 2020 U.S. Dist. LEXIS 52632, at *25-33. Such an approach is warranted where, as here, the requested $15,000 Service Award compares favorably to awards approved in other class action settlements resolving wage rights lawsuits. *See*, *e.g.*, *Roxberry v. Snyders-Lance, Inc.*, 2017 U.S. Dist. LEXIS 193573, at *5-6 (M.D. Pa. Nov. 15, 2017). ($19,000); *In re Janney Montgomery Scott LLC Financial Consultant Litig.*, 2009 WL 2137224, 2009 U.S. Dist. LEXIS 60790, at *36 (E.D. Pa. July 16, 2009) ($20,000).

proportional to the unpaid overtime wages due calculated by Plaintiff's data analyst to be due to them as a result of Target's challenged pay practice; is the result of careful analysis by Class Counsel; and is based upon objectively ascertainable data. *See supra* pp. 3-4.

In sum, at the final approval stage, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i).

### B.    The Notice Form and Protocols Warrant Approval.

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Any notice form distributed to the class must convey "clearly and concisely . . . in plain, easily understood language" the following information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the above notice requirements are satisfied. As noted earlier, the Agreement requires the Administrator to mail to each Class Member one of two detailed notice forms, depending on whether Target has records of hours worked for each of them. *See* DI 109-1(Agreement) at ¶ 41 & Exs. C-D (Notice of Settlement forms). These forms will be mailed to the Class Members' best and last known addresses. *See id.* at ¶ 39. Before mailing, the Administrator will check all addresses against the National Change of Address Database. *See id.* Thereafter, the Administrator will follow strict protocols in updating the addresses of any Class Members whose notice forms are returned as undeliverable. *See id.* Rule 23 expressly contemplates such notice-by-mail protocols. *See* Fed. R. Civ. P. 23(c)(2)(B).

13

Moreover, the proposed notice form is clearly written and satisfies each of Rule 23(c)(2)(B)'s content requirements. *See* DI 109-1 at Exs. C & D (Notices).

## IV.    <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully asks the Court grant this motion and enter the accompanying proposed order.

Date:  November 6, 2025                    Respectfully,

<u>/s/ *Deirdre Aaron*</u>
Peter Winebrake
Deirdre Aaron
**Winebrake & Santillo, LLC**
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

Sarah R. Schalman-Bergen
Krysten Connon
**Lichten & Liss-Riordan, P.C.**
729 Boylston Street, Suite 2000
Boston, MA  02116
(267) 256-9973

Maureen A. Salas (*pro hac vice*)
**Werman Salas P.C**.
77 W. Washington St., Ste 1402
Chicago, IL 60602
(312) 419-1008

*Class Counsel*